[L. A. No. 4069.  Department Two.—December 31, 1917.]

## SUPREME LODGE OF THE WORLD, LOYAL ORDER OF MOOSE (a Corporation), et al., Appellants, v. LOS ANGELES LODGE No. 386, LOYAL ORDER OF MOOSE (a Corporation), et al., Respondents.

MUTUAL BENEFIT ASSOCIATION—REVOCATION OF CHARTER OF SUBORDINATE LODGE—FORFEITURE OF LODGE PROPERTY.—A provision of the constitution and laws of a fraternal order declaring that the supreme dictator may suspend or revoke the charter of any subordinate lodge "when in his opinion the conditions of any subordinate lodge warrant it," coupled with a by-law providing that any subordinate lodge, having been "*found guilty*" of violating any provision of the constitution, laws, and regulations, shall be suspended or have its charter revoked, as may be determined by the supreme lodge or the supreme council, according to the laws of the order, and that, upon such suspension or revocation, the lodge property and paraphernalia shall be forfeited to the supreme lodge, clearly implies that there shall be a notice and hearing of charges preferred, and the action of the supreme dictator revoking the charter of a subordinate lodge, having been taken without notice of any charges on which he proposed to act, and without any charges or hearing, or opportunity to be heard, although such action was confirmed by the supreme forum on appeal, was ineffectual for the accomplishment of such revocation, and no forfeiture of the property of the lodge could be declared as the result of such illegal act.

ID.—CONSTITUTIONAL LAW—DUE PROCESS OF LAW.—The claim that the subordinate lodge and its members by accepting the charter assented to a contract whereby they agreed that, upon a revocation of the charter, the lodge property was *ipso facto* transferred to the supreme lodge, is contrary to the provision of the constitution of the United States that no one shall be deprived of property without due process of law.

ID.—ILLEGAL REVOCATION OF CHARTER—STATUS OF LODGE MEMBERS.—Where upon an illegal attempted revocation by the supreme lodge of the charter of a subordinate lodge a majority of the members renounced their allegiance to the supreme lodge, they were not seceders, but remained a duly created, organized, and existing lodge.

ID.—FORMATION OF NEW LODGE.—Where, upon the unlawful revocation of the charter of a subordinate lodge, a majority of the members renounced their allegiance to the supreme lodge, the minority members, who, adhering to the supreme lodge, organized a new lodge

to which the supreme lodge issued a charter, had no right to the property acquired by the original lodge for lodge purposes.

Claim and Delivery—Judgment for Defendant—Excessive Damages —Modification of Judgment on Appeal.—Where, in an action for the recovery of personal property by proceedings by "claim and delivery," the property having been taken by the plaintiff, the defendant, by answer, claims the return of the property with damages for its taking and detention, and recovers judgment, a finding in its favor for damages in excess of the amount claimed in the answer is erroneous, and, on appeal, the judgment must be modified in that respect.

APPEAL from a judgment of the Superior Court of Los Angeles County. Chas. Wellborn, Judge.

The facts are stated in the opinion of the court.

Arthur H. Jones, L. S. Arnold, and Morgenstern, McGee, Henning & Hendee, for Appellants.

Ingle Carpenter, Charles W. Fourl, and Georgia P. Bullock, for Respondents.

VICTOR E. SHAW, J., *pro tem.*—Action in claim and delivery to recover possession of certain property consisting of lodge furniture and furnishings alleged to be wrongfully withheld by defendants from plaintiffs.

The material facts out of which the action arose, in so far as necessary to this decision, are as follows: The plaintiff Supreme Lodge of the World, Loyal Order of Moose, is a fraternal organization incorporated under the laws of Indiana. As declared in the articles of incorporation, "The object of the association shall be to organize subordinate lodges throughout the world. Such lodges shall have ritualistic ceremonies as prescribed by the Supreme Lodge of the World, Loyal Order of Moose; to unite in the bonds of fraternity, benevolence and charity all acceptable white male persons of good character, to educate and improve all members and their families morally, socially and intellectually, to assist the members and their families in times of need, to aid and assist the widows and orphans of deceased members of the order, to encourage its members in patriotism and obedience to the laws of the country and in the tolerance of religion."

In 1910, under a charter issued to it by said supreme lodge, Los Angeles Lodge, No. 386, Loyal Order of Moose, was organized as a subordinate lodge of said fraternity, the membership of which in 1913 was approximately three thousand five hundred. With funds obtained from initiation fees and membership dues, said Lodge No. 386 provided suitable quarters for meetings and use of its members and, at a cost of upward of twenty thousand dollars, acquired the property which constitutes the subject of this litigation. In November, 1913, Lodge No. 386, purporting to act under the laws of this state, incorporated under the name of Los Angeles Lodge, No. 386, Loyal Order of Moose, to which lodge as thus incorporated all the property theretofore owned by the lodge was, in consideration of the assumption of liabilities of the vendor, transferred by bill of sale.

Section 7 of article IV of the constitution and laws of the supreme lodge provides that "when in the opinion of the Supreme Dictator the conditions of any subordinate lodge are such as to warrant it, he may suspend or revoke the charter of such lodge." Acting under the authority conferred by this provision, and without notice or the preferring of any charges or according the lodge any hearing, the supreme dictator, on February 11, 1914, suspended the charter and thereafter, on February 20, 1914, likewise without notice, charges, or hearing, revoked defendant's charter and at the same time, acting under article XVII of the by-laws of the supreme lodge, which provides that "in the event of the suspension, revocation, or surrender of the charter of a subordinate lodge by the Supreme Lodge, Supreme Council, or Supreme Dictator, as provided by the laws of the order, the charter, paraphernalia and all other property of the lodge shall be forfeited to the Supreme Lodge, and the Supreme Dictator, or some member duly authorized by him, shall take possession of said property and place the same in the custody of the Supreme Secretary," authorized certain members of Lodge No. 386 to take possession of the property and assets of the lodge, which, upon demand, refused to surrender the same and appealed to the supreme forum, which, on April 1, 1914, rendered its judgment that the action of the supreme dictator in revoking the charter of Los Angeles Lodge, No. 386, Loyal Order of Moose, "be and the same are hereby approved and confirmed." Thereupon, about seven hundred of the three

thousand five hundred members constituting Lodge No. 386 withdrew therefrom and formed a voluntary new lodge, assuming the name, "Los Angeles Lodge, Loyal Order of Moose, No. 386," to which the supreme lodge issued a charter so designated. This action, in which certain members of the new lodge are joined as plaintiffs, followed, and the property in controversy was, in accordance with the provisions of the statute, delivered into the possession of plaintiffs. Upon trial an alternative judgment, as required in such cases and wherein damages were adjudged for the wrongful taking and detention, was entered in favor of defendant, from which, and an order denying plaintiffs' motion for a new trial, they prosecute this appeal.

Appellants base their claim of right to the property, first, upon the action of the supreme dictator in revoking defendant's charter, as confirmed by the supreme forum, and the by-law of the supreme lodge providing that in such event all property of the subordinate lodge should be forfeited to the supreme lodge; second, that the property was impressed with a trust in that, notwithstanding the fact it was bought and paid for by the members of the lodge, it was dedicated to the specific purposes of its organization under the jurisdiction of the supreme lodge from which it held a warrant for its existence, which trust was repudiated by defendant in seceding from the supreme lodge.

In our opinion, neither position is tenable. As to the first proposition, the property in question was lawfully in the possession of defendant, having been acquired by it with funds to which the supreme lodge contributed nothing. This being true, it is entitled to retain possession thereof, unless there be some rule or by-law of the order which imposes upon it the obligation to deliver possession to the plaintiffs. The only provision upon which to base a claim of such duty is by-law 17 hereinbefore quoted. The forfeiture so provided for is based upon the action of the supreme dictator in revoking defendant's charter. As to this action the trial court, upon conclusive evidence, found that the supreme dictator revoked defendant's charter "without any charges having been filed against such lodge or the members thereof, and without notice of charges having been served upon the members of the lodge, and without a hearing upon any charges whatsoever"; and that thereafter the supreme forum, upon the appeal had by

said Lodge No. 386, by an order made, sustained the action of said supreme dictator in revoking the said charter. Not only is there an absence in the by-laws of any provision constituting a waiver of notice of the hearing of a proceeding upon which to base such alleged forfeiture, but article III of section 1 of the by-laws of the supreme lodge provides that "any subordinate lodge having been found guilty of violating any provision of the constitution, general laws, rules and regulations of the order, shall be suspended, or have its charter revoked, as may be determined by the supreme lodge or the supreme council, according to the laws of the order."

In *Grand Grove, etc.,* v. *Garibaldi Grove,* 105 Cal. 219, [38 Pac. 947], it is said: "It is well settled that a member of a benevolent association cannot be expelled without being given a hearing, and that a by-law which authorizes such a course is unreasonable and without effect," citing in support thereof: *Fritz* v. *Muck,* 62 How. Pr. (N. Y.) 69; *Wachtel* v. *Noah Widows' etc. Soc.,* 84 N. Y. 28, [38 Am. Rep. 478] ; *People* v. *Musical etc. Union,* 118 N. Y. 108, [23 N. E. 129] ; to which may be added *Hall* v. *Supreme Lodge,* 24 Fed. 450, and *Ludowski* v. *Benevolent Society,* 29 Mo. App. 337. Continuing, the court says: "There is no distinction in principle between expelling a member from a subordinate grove and revoking the charter of the grove itself or suspending its charter." In *Grand Grove, etc.,* v. *Garibaldi Grove,* 130 Cal. 116, [80 Am. St. Rep. 80, 62 Pac. 486], it is said: "The party accused must also have had notice of the trial of the charge and an opportunity of being heard in his defense." Appellants insist that defendant Lodge No. 386 and its members by their acts assented to the provision under which the supreme dictator acted, and that such assent is in the nature of a contract whereby they are estopped from complaining of the action of forfeiture taken; that having agreed that upon a revocation of its charter its property should be forfeited to the supreme lodge, and such revocation, though made without notice, charges, or hearing, having been made, the property *ipso facto* was transferred to the supreme lodge. This contention finds no support in the authorities cited and is contrary to the provision of the constitution of the United States, to the effect that no one "shall be deprived of property without due process of law." (Const. U. S., Amend. 14.) Moreover, our attention is directed to nothing in the constitution or by-laws

of the order giving the supreme dictator or the supreme lodge the power to act thus arbitrarily without notice or hearing. The provision of the by-law empowering the supreme dictator to revoke the charter of a subordinate lodge does not provide that he may take such action *without notice* to the lodge of the charges upon which he proposes to act, and article III, section 1, of the by-laws hereinbefore quoted, provides for revocation of charters of subordinate lodges when they are *"found guilty* of violating provisions of the constitution, general laws, rules and regulations of the order." This provision clearly implies notice and hearing of charges preferred. Unless so *found guilty* of some one or all of these acts, no ground would exist for the revocation of a charter. The action of the supreme dictator, confirmed on appeal by the supreme forum, taken without notice, was arbitrary and in violation of the principle of natural justice that no one shall be condemned without an opportunity to be heard in his defense. Moreover, it was in violation of said article III, section 1, since it was taken without any finding that defendant was guilty of any offense for which either he or the supreme lodge was authorized to revoke its charter. Since the supreme lodge could only revoke the charter upon a finding, which implies a hearing, that it was guilty of violating some provision of the constitution, general laws, rules, and regulations of the order, it should follow that the supreme dictator could not, without express provision of waiver of notice, be deemed to possess greater powers than those of the supreme lodge itself.

It is unnecessary to decide whether or not a forfeiture of defendant's property would follow the revocation of its charter if duly made in accordance with law. That question is not before us. Suffice it to say that the purported revocation, since made without notice, charges, or opportunity to be heard, as to which there was no waiver, is ineffectual for the accomplishment of such purpose, and hence no forfeiture of the property could be declared as the result of such illegal and unwarranted act.

As to their second proposition, appellants argue that the new lodge, organized by the seven hundred members withdrawing from defendant lodge and for and on behalf of whom the individual plaintiffs sue, was entitled to the property, for the reason that after the revocation they continued loyal and

steadfast in their allegiance to the supreme lodge; in other words, they yielded to the unwarranted action of the supreme dictator, withdrew from the lodge, and, under a dispensation issued on March 14, 1914, by the supreme secretary, who acknowledged receipt of the charter and authorized the institution of the new lodge, to which, as therein stated, "if the constitution and laws of the Loyal Order of Moose are complied with in the institution of said lodge, a charter granting to the members of the aforesaid lodge all rights and privileges of membership in the Loyal Order of Moose, will be forwarded," formed a new one. The argument is based upon the contention that the members of defendant lodge, having repudiated their allegiance to the purposes for which the subordinate lodge was organized, were seceders therefrom, in support of which authorities are cited to the effect that where a majority, however large, secede and renounce their allegiance to the supreme body, the minority, however small, who remain steadfast to the purposes of the order, are entitled to the lodge property. (See *McFadden* v. *Murphy*, 149 Mass. 341, [21 N. E. 868], *Union Ben. Soc.* v. *Martin*, 113 Ky. 25, [67 S. W. 38], *Gorman* v. *O'Connor*, 155 Pa. St. 239, [26 Atl. 379], and *Kayley* v. *McCourt*, 235 Pa. St. 304, [83 Atl. 830].) Conceding this to be true, how can it be said that the members of defendant lodge are disloyal seceders, when, in protesting the unwarranted action of the supreme dictator in the attempted revocation of their charter, they exhausted all remedies in an effort to maintain their relation and allegiance to the supreme lodge, which, against its will and consent and over its protest, unlawfully refused to recognize it as a subordinate lodge? How can it be said the members who withdrew, thus severing their connection with defendant lodge, obtained and paid for a new charter, and by authority of the supreme lodge organized a new one, constitute a remaining minority of defendant lodge? Defendant and its members were not seceders, but, except for the severance of its relations with the supreme lodge due to the latter's action, continued in the use of the property, holding its meetings, collecting dues, and paying sick and death benefits as fully and to the same extent after the revocation of its charter as it had theretofore done.

Neither can its secession be predicated upon a resolution adopted by the lodge nearly a month after the action of the

supreme forum, whereby it renounced its allegiance to the supreme lodge and declared that it did not recognize its authority. This was no more than an expression of its acquiescence in a helpless situation. Plaintiffs are in no position to complain because defendant, after being knocked down with a club, refuses to get up.

In the absence of a legal revocation of its charter, defendant lodge, as shown by this record, was at all the times a duly created, organized, and existing lodge, and, save and except in so far as prevented by the wrongful acts of the supreme lodge, continued in the exercise of its functions in accordance with the purposes for which it was organized, as provided in the constitution and by-laws of the organization. This being true, the withdrawing members who organized the new lodge can have no just right to the property acquired and used by defendant lodge for lodge purposes.

In its answer defendant alleged that by reason of the taking and detention of the property it sustained damages in the sum of twenty dollars per day during the time it was deprived of the use thereof. The property was taken May 25th and the judgment rendered August 18th. For this period of eighty-five days, during which the property was unlawfully detained, the court found that by reason thereof defendant suffered damages in the sum of three thousand dollars. This was in excess of the amount demanded in the answer, since the damages alleged for such detention, at twenty dollars per day for a period of eighty-five days, amounts to one thousand seven hundred dollars only. In this respect the finding is erroneous and the judgment should be modified by deducting therefrom the sum of one thousand three hundred dollars.

There is ample evidence to support the finding that by reason of the removal and deterioration of the property, due to such fact, defendant was damaged in the sum of two thousand five hundred dollars.

Appellants further claim that the court failed to find that defendant at any time was entitled to possession of the personal property in controversy, or that the plaintiffs wrongfully withheld the same from its possession. In our opinion, there is no merit in such contention. To our minds, the question as to whether or not defendant was a duly incorporated lodge is immaterial. It was at least a *de facto* corporation purporting to act as such, and whether it be

incorporated or a voluntary association, would not affect the result of our conclusion. (*Stockton & L. G. Road Co.* v. *Stockton & C. R. R. Co.*, 45 Cal. 680; *Los Angeles etc. Bank* v. *Spires*, 126 Cal. 545, [58 Pac. 1049]; *Baltimore etc. R. Co.* v. *Church*, 137 U. S. 572, [34 L. Ed. 784, 11 Sup. Ct. Rep. 185].) The court found that all of said personal property involved in the controversy was in possession and control of the defendant; that all of said personal property described in the complaint was in possession of the defendant Los Angeles Lodge, No. 386, Loyal Order of Moose, a purported corporation, at the institution of this action, and was given into the possession of the plaintiffs herein by virtue of an order indorsed upon the complaint, as provided by the code; that plaintiffs had no right to said property or to the possession thereof.

Other points urged by appellants are disposed of by the conclusion reached herein; hence it is unnecessary to further consider them.

Upon going down of the *remittitur*, the trial court is directed to modify the judgment by deducting therefrom the sum of one thousand three hundred dollars; and as thus modified the judgment and order are affirmed. And it is further ordered that appellants have judgment against defendant for the costs of this appeal.

Melvin, J., and Henshaw, J., concurred.