## A. M. Kauffman, Appellant, v. David J. Plank et al., Appellees.

1. RELIGIOUS SOCIETIES, § 39*—*when equity without jurisdiction to compel restoration of membership.* Equity had no jurisdiction, against bishops and ministers of a voluntary religious organization, to restore to membership a member who had been expelled pursuant to a church trial, where the bill alleged that under the decree pronounced against complainant the rest of the membership, including members of complainant's family, were bound not to deal religiously, socially, financially or otherwise with complainant, but did not pray for relief as to financial loss.

2. RELIGIOUS SOCIETIES, § 39*—*when equity without jurisdiction to compel restoration of membership.* Where the sole object of a bill which in effect was one to restore complainant to membership in a voluntary religious organization from which he had been expelled pursuant to a church trial provided by the doctrines or rules of such organization, it followed that no civil or property rights were involved, and equity had no jurisdiction even though under the demurrer the defendants admitted that they practiced "tyranny, force, fraud, oppression or corruption" on complainant.

Appeal from the Circuit Court of Douglas county; the Hon. GEORGE A. SENTEL, Judge, presiding. Heard in this court at the October term, 1918. Affirmed. Opinion filed April 29, 1919.

A. L. GILLIOM and CHARLES TROUP, for appellant.

P. M. MOORE and JOHN H. CHADWICK, for appellees.

MR. JUSTICE WAGGONER delivered the opinion of the court.

The appellant filed his bill, as amendment to the bill and a supplemental bill, against David J. Plank, Andrew J. Mast, Joseph Schrock, Abraham Schrock and Eli Otto, appellees, in which he prays that the appellees may be restrained from further preventing the complainant to assemble with the other members of the Amish Mennonite Church at the homes of the

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

various members of the congregation, and to worship in said homes with said membership, and the said defendants and each of them may be restrained from obstructing, interfering with, forbidding, or in any manner preventing the appellant from worshiping with the members of said church at the various homes of the members, or from preventing him from worshiping with the membership of said church at his own home, and further, to prevent them from in any manner interfering with the appellant's rights as a member of said church.

The appellees filed a demurrer, in the circuit court, which was sustained by it. They admit that in 1914 the complainant and the defendants were members of the Amish Mennonite Church, a voluntary religious organization, the membership of which live in the western part of Douglas county and the eastern part of Moultrie county, Illinois; that said organization is not incorporated, and has no printed constitution and by-laws, but its principles, creed, doctrines and code of discipline rest wholly in custom; that the defendants, David J. Plank and Andrew J. Mast are bishops, and the defendants, Joseph Schrock, Abraham Schrock and Eli Otto, are ministers in said church; that said organization has no church ground or building separately set aside and dedicated as a place for worship, but the meetings are held in the homes of the members; that the church discipline requires each member to dedicate his dwelling to the purpose of holding meetings; that under the doctrines of said church all matters in dispute of an ecclesiastical nature which arise between members are settled by a church trial, at which all members of the congregation, excluding the parties to the controversy, are judges; that under said rules no member should be expelled without first being duly charged with an offense against the principles, creed, doctrines or discipline of the church, and without being duly notified of the charge, its nature,

the time and place of the trial, and without an opportunity to be heard and introduce evidence in his own defense; that it was the doctrine of said church that when any one was duly excluded from membership a decree of separation should be pronounced against him, and thereupon he would not be permitted to have any religious, social, *financial,* or other relations or intercourse with the rest of the membership, including such members of his own family who were members of the church; and the rest of the members of the church were bound not to have any *business or other dealings* with said member so excluded, and should not religiously, socially, *financially or otherwise,* deal with or assist such person so excluded, for the purpose of punishing him for his offense against the church; that appellant is a member and was in 1914 a member and had been a member in excellent standing for approximately 40 years previous thereto; that appellant has violated none of the principles, creed and doctrine of said church; that in 1912 the defendant David J. Plank entered into a written contract with one named Trexler for the transfer of certain real estate; that Plank refused to perform his part of the contract and Trexler, being a close neighbor to appellant and not a member of said church, requested appellant to use his influence with Plank to secure the performance of said contract; that appellant was under the belief that Plank was seeking to avoid his obligation under said contract, and pursuant to a rule of said church, which provided that one knowing of a brother in error should admonish him, the appellant undertook to influence Plank to perform said contract in order to save Plank's reputation for fair dealing and the reputation for fair dealing of said religious sect; that appellant was unable to induce Plank to perform said contract; that appellant and Plank differed as to the proper construction of the contract, and the question of the

construction of the contract was brought before a meeting of the congregation; that at such meeting a committee was selected who construed the contract against Plank; that Plank still refused to adjust said matter with Trexler, thereupon the congregation met again at Plank's house to reconsider the proper construction to be put on the contract, and a special committee then chosen came to the conclusion that both constructions were probably reasonable constructions and requested appellant to grant Plank the privilege of construing the contract, whereupon appellant refused, and thereupon, and only because appellant refused to accede to said request, the defendants wilfully, maliciously and wrongfully usurped power and arbitrarily constituted themselves an unauthorized tribunal, and then and there went into executive session, the object of which was unknown to appellant, and later emerged into the presence of the congregation, and without first having permitted a vote by the members of the congregation, announced they had expelled appellant without assigning any reason, and pronounced a decree of separation forbidding appellant to worship with said congregation wherever it might assemble, and forbidding the entire membership to deal with appellant, or have any relations with him religiously, socially or pecuniarily; that complainant is the father of several children who are members of said church; that by reason of said separation decree complainant has been deprived from having any filial relation with said children; that defendants by said acts have ruined appellant financially and deprived him of much money and property; that appellant is about seventy years old; that he has lived in Amish Mennonite environment during his entire life; that his church life has been the most important and vital factor of his existence; that since his trouble with Plank his wife has died; that the separation from his children and church members has broken appellant

in heart and spirit and is menacing his health of body and mind; that there is no appellate tribunal in said church and the action of the defendants is not appealable; that appellant went to a meeting at the home of John Stutzman to worship and defendant Plank ordered him to leave, and to prevent a breach of the peace appellant was obliged to leave at once.

The defendants admitting all the foregoing as facts, the question presented is, can a court of equity grant the relief prayed?

The defendants cite *Fussell v. Hail,* 233 Ill. 73 (77), and quote the following as their defense: "The civil courts afford no remedy for any abuse of ecclesiastical authority which does not violate a civil or property right. Church tribunals ought to perform their functions honestly, impartially and justly, with due regard to their constitutional powers, sound morals and the rights of all who are interested; *but if tyranny, force, fraud, oppression or corruption prevail,* no civil remedy exists for such abuse except where it trenches upon some property or civil right."

It is sufficient then, for the purposes of this case, to decide whether the "tyranny, force, fraud, oppression or corruption," that defendants admit that they practiced on appellant, invade any of appellant's civil or property rights.

It is to be observed that the prayer of the bill is to restore the complainant to membership in the church. No relief is asked with reference to the financial loss sustained by appellant as a result of the illegal boycott established by the defendants. The sole object of this bill being to restore the complainant to membership in the church, it follows that no civil or property rights are involved. *Presbyterian Church of Lincoln v. First Cumberland Presbyterian Church of Lincoln,* 245 Ill. 74 (90). We cannot, in order to give this unfortunate complainant relief, involve the State in the grave questions that would result from a

failure to maintain inviolate the boundary between church and State. *Chase v. Cheney*, 58 Ill. 509 (536, 537). The circuit court did not err in sustaining the demurrer.

Decree affirmed.

*Affirmed.*