[Civ. No. 5633.    First Appellate District, Division Two.—September 22, 1926.]

# KNIGHTS OF THE KU KLUX KLAN, INC., Appellant, v. LEON C. FRANCIS et al., Respondents.

[1] FRATERNAL SOCIETIES—RELATION TO PARENT ORGANIZATION—RIGHTS OF SUBORDINATE LODGE—CONTRACT—DUE PROCESS.—The charter of a subordinate lodge and the constitution and by-laws of the parent organization constitute a contract between the lodge and the parent organization; and the right to organize, to collect dues from members, and to acquire and hold property is a right coming to the lodge through this contract of which the lodge may not be deprived without due process of law.

[2] ID.—SUSPENSIONS—REVOCATION OF CHARTER—HEARING.—A member of a subordinate lodge may not be expelled without a hearing, and a by-law authorizing such procedure is unreasonable and void; and there is no essential difference between suspending or expelling a member from a subordinate lodge and from suspending or revoking its charter.

[3] ID. — WAIVER OF NOTICE — INEFFECTUAL SUSPENSION. — Where the charter of a subordinate lodge authorizes the presiding officer of the parent organization to cancel, suspend, or revoke such charter for the neglect or the refusal on the part of said subordinate lodge to conform to and comply with the constitution of the parent body, and for other specified causes, but there is no provision in said charter or said constitution which authorizes this action to be taken without notice to the accused lodge or without a hearing and a determination of the truth of the charges assigned, the action of the presiding officer of the parent organization pretending to suspend the charter of said subordinate lodge without notice and without a hearing is ineffectual for that purpose.

[4] ID.—SUSPENSION OF CHARTER—OWNERSHIP OF MONEYS—RIGHT TO HEARING.—Where the constitution of the parent organization provides that in the event the charter of a subordinate lodge has been "revoked or cancelled for any cause" all moneys of such subordinate lodge shall automatically become the actual moneys of the parent organization and must be turned over, on demand, to the properly accredited officer of the parent organization, said parent organization is not entitled to the possession of said moneys until

1.    See 19 Cal. Jur. 473.
2.    See 19 Cal. Jur. 472.

the charter of the subordinate lodge has been "revoked or cancelled for any cause," and such cause must be found after a hearing of the charges.

---

(1) 7 C. J., p. 1109, n. 85, p. 1110, n. 92, p. 1115, n. 41 New. (2) 7 C. J., p. 1104, n. 99.   (3) 7 C. J., p. 1115, n. 42, 43.   (4) 7 C. J., p. 1116, n. 51 New.

APPEAL from a judgment of the Superior Court of Alameda County. John Perry Wood, Judge. Affirmed.

The facts are stated in the opinion of the court.

James H. Boyer and John H. Connaughton for Appellant.

John L. McVey and Frank W. Hooper for Respondents.

NOURSE, J.—Plaintiff commenced three actions against the defendants—two in claim and delivery and one in conversion—to recover the moneys and property held by the defendants as members of the Oakland Klan No. 9. Judgment went for the defendants in each case and the plaintiff has appealed on a bill of exceptions. By stipulation the three appeals have been consolidated and are to be heard as one.

The plaintiff is a corporation having its main office in Atlanta, Georgia; the Oakland Klan No. 9 is an unincorporated subordinate lodge organized and chartered under the constitution of the plaintiff. The presiding officer of the plaintiff, known as the imperial wizard, signed and caused to be served upon the Oakland Klan a notice of suspension of its charter, without any previous notice to the Klan and without presentation of or hearing upon any charges against the Klan or against any of its members. From this order of suspension an appeal was taken to the tribunal provided by the plaintiff for that purpose and this appeal was still pending at the time of the trial of these actions.

The consolidated appeals from the three judgments all present the question whether a subordinate lodge of a fraternal organization can be suspended by the officers of the parent body without charges and without a trial unless the charter and by-laws of the organization specifically

waive those rights. The determination of the question depends upon certain fundamental principles which may be briefly referred to. **[1]** The charter of a subordinate lodge and the constitution and by-laws of the parent organization constitute a contract between the lodge and the parent organization. (*Grand Grove, etc.,* v. *Garibaldi Grove, etc.,* 105 Cal. 219, 224 [38 Pac. 947].) The right to organize, to collect dues from members, and to acquire and hold property is a right coming to the lodge through this contract of which the lodge may not be deprived without due process of law. What is due process in such a case may be determined by reference to analogous proceedings. There is no essential difference between suspending or expelling a member from a subordinate lodge and from suspending or revoking its charter. (*Grand Grove, etc.,* v. *Garibaldi Grove, etc., supra.*) **[2]** A member of a subordinate lodge may not be expelled without a hearing and a by-law authorizing such procedure is unreasonable and void. (*Grand Grove, etc.,* v. *Garibaldi Grove, etc., supra; Taboada* v. *Sociedad Espanola, etc.,* 191 Cal. 187, 191 [27 A. L. R. 1058, 215 Pac. 673].)

There is no essential difference between this right to a hearing on the part of a lodge member and the right of a public officer appointed under statutory or charter limitations on the power of suspension or removal, or the right of one holding a license to practice a profession or trade. The power to remove a public officer ''for cause,'' without other statutory limitations, implies the existence of the fact of good and reasonable cause which can be determined only after notice to the accused and an opportunity to be heard in his defense. (*Bannerman* v. *Boyle,* 160 Cal. 197, 206 [116 Pac. 732].) The suspension or revocation of a professional license is a deprivation of a property right which can be had only after a judicial, or *quasi*-judicial hearing. (*Suckow* v. *Alderson,* 182 Cal. 247, 249 [187 Pac. 965] ; *Brecheen* v. *Riley,* 187 Cal. 121, 124 [200 Pac. 1042] ; *Schomig* v. *Keiser,* 189 Cal. 596, 598 [209 Pac. 550] ; *Abrams* v. *Daugherty,* 60 Cal. App. 297, 302 [212 Pac. 942].)

In *Bannerman* v. *Boyle, supra,* Mr. Justice Shaw pointed out that the rule was equally applicable where the statute limited the power of suspension or removal to ''cause,'' or

"good and reasonable cause," or to any specified cause such as "misconduct," "misbehavior," and the like. The effect of the decisions is that, where the power is so limited, the existence of the cause, whether general or specified, is a matter of fact which must be found after a hearing of which the accused has been given notice and an opportunity to appear.

As applied to the suspension or removal of a member of a subordinate lodge it has been said: "And a society acting upon the expulsion of a member is a *quasi*-judicial body and its hearing is a *quasi*-judicial hearing. (*Otto* v. *Tailors' P. & B. Union,* 75 Cal. 308 [7 Am. St. Rep. 156, 17 Pac. 217].) The proceedings of the society, in order to be regular and legal, in effect, must, therefore, provide for notice to the accused and afford him an opportunity to be heard. (*Fay* v. *Supreme Tent, Knights of the Maccabees of the World,* 38 Misc. Rep. 427 [77 N. Y. Supp. 994, 996].)" (*Taboado* v. *Sociedad Espanola, etc.,* 191 Cal. 191 [27 A. L. R. 1508, 215 Pac. 674].) As applied to the suspension or revocation of the charter of a subordinate lodge, it has been said: "Whoever would claim the right to deprive another of property or privilege, without giving him an opportunity to defend the same, must show some consent on his part to such action." (*Grand Grove, etc.,* v. *Garibaldi Grove, etc.,* 105 Cal. 224, 225 [38 Pac. 947, 948].)

[3] In the case at hand the charter of the Oakland Klan authorized the imperial wizard "to cancel, suspend or revoke this charter . . . for the neglect or the refusal on the part of the said Klan to conform to and comply with the Kloran constitution" and for other specified causes. There is no provision, either in the charter or in the portions of the constitution of the parent organization appearing in the transcript, which authorizes this action to be taken without notice to the accused lodge or without a hearing and a determination of the truth of the charges assigned. The action of the imperial wizard of the parent organization pretended to suspend the charter of the Oakland Klan for an indefinite period without notice and without a hearing and was, therefore, ineffectual for that purpose.

[4]   Furthermore, we are unable to understand the theory upon which the appellant bases its claim to the moneys and property held by the respondents.  Section 23 of the constitution of the parent order provides that ''In the event the charter of a Klan has been revoked or cancelled for any cause, whatsoever, and in the event of disbandment of a Klan, whether it be a chartered or Provisional Klan, all monies of that Klan in the possession of any officer or member thereof shall automatically become the actual monies of the Imperial Treasury of this Order and same must be freely and promptly turned over, on demand, to the properly accredited officer who is authorized by the Imperial Wizard to receive same in the name of this Order.'' (Transcript, p. 69.)  Thus, even if the suspension were valid for any purpose, the appellant is not entitled to the possession of the property of the Oakland Klan until the charter of the latter has been ''revoked or cancelled for any cause'' and such cause, as we have seen, must be found after a hearing of charges.

Judgments affirmed.

Sturtevant, **J.**, and Cabaniss, **P. J.**, *pro tem.*, concurred.