[L. A. No. 22542. In Bank. Oct. 29, 1954.]

CLARENCE ERICKSON, Appellant, v. GOSPEL FOUNDATION OF CALIFORNIA (a Nonprofit Corporation) et al., Respondents.

582

John W. Preston and Joseph Choate for Appellant.

Gibson, Dunn & Crutcher, Sherman Welpton, Jr., and Leslie G. Turner for Respondents.

GIBSON, C. J.—The membership of plaintiff in defendant Gospel Foundation of California was cancelled by vote of the members, and he brought this action for declaratory relief to determine the validity of the cancellation. Plaintiff joined as defendants Mary Liddecoat and Norman E. Johnson, who are both members and directors of the Foundation, Selma C. Abnot, who was elected a member and director in plaintiff's place, and Walter E. Webb, the general manager. He has appealed from a judgment declaring that his membership was validly cancelled and annulled.

The Foundation is a nonprofit corporation formed in 1946 under the laws of California. Its purpose is to foster, promote and operate religious, charitable, evangelistic and mission enterprises, and members are required to subscribe to a doctrinal statement which consists of tenets of a solely religious nature.

The authorized number of members of the Foundation is the same as the number of directors, which is fixed at three, and the personnel of the membership and directorship is identical. No member is to obtain any pecuniary gain or profit, and in the event of dissolution the property of the Foundation is not to go to the members but to certain named organizations.

The by-laws provide that every member is entitled to one vote and, in addition, shall have one vote for each $1,000 in money or property conveyed to and accepted by the Foundation and that all contributions shall be subject to approval and acceptance by a majority of the votes of the members. It is further provided that a membership may be cancelled and annulled by a majority vote.

The original members and directors were A. M. Johnson, Mary Liddecoat and Norman Johnson. In December, 1947,

at a special meeting, the directors adopted a resolution that the Foundation accept a donation of $2,000 from Miss Liddecoat and that she be given two extra votes as provided by the by-laws. Later in December A. M. Johnson conveyed to the Foundation property valued in excess of a million dollars. At a special meeting on January 12, 1948, after the death of A. M. Johnson, plaintiff was elected a director. Plaintiff voted in favor of ratifying and approving the minutes of the prior meeting at which Miss Liddecoat was granted two extra votes in return for her contribution. In 1950 Miss Liddecoat became disturbed by plaintiff's conduct and attitude toward the Foundation, and at a special meeting of members in August of that year, called to consider annulment of his membership, Miss Liddecoat voted three votes in favor of cancellation, and Norman Johnson voted against such action. Plaintiff, although present, did not vote.

Plaintiff challenges the validity of the by-law which grants an additional vote to a member for each contribution of $1,000 accepted by the Foundation. His attack is based upon the claim that there is only one class of members in the Foundation and that the statutes require equal voting rights for all members of one class in a nonprofit corporation. At the time the Foundation was incorporated and this by-law was adopted the applicable statutes provided as follows: ''The authorized number and qualifications of its members, the different classes of membership, if any, the property, voting, and other rights and privileges of each class of membership, and [certain other matters] may be set forth either in the articles or in the by-laws.'' (Civ. Code, § 595, subd. 5, now embodied in Corp. Code, § 9301, 1st par.) The by-laws ''may contain, among other things, provisions for: . . . (9) The qualifications of members and different classes of memberships, and the property, voting and other rights, interests or privileges of each class.'' (Civ. Code, § 598, now embodied in Corp. Code, § 9402, subd. b.) ''A nonprofit corporation shall have such memberships or classes thereof as may be specified in the articles or by-laws, but unless otherwise provided there shall be but one class of members whose rights and interests shall be equal.'' (Civ. Code, § 600, 1st par., reenacted as Corp. Code, § 9602.) ''Unless otherwise provided in the articles or by-laws every member of a nonprofit corporation shall be entitled to one vote and may vote or act by proxy. . . . No member may cumulate his votes unless it is so provided in the articles or by-laws.'' (Civ. Code, § 603, now embodied in Corp. Code, § 9601.)

■ The quoted sections leave no doubt that it was competent for the Foundation, as a nonprofit corporation, to provide for unequal voting rights between members of different classes. The challenged by-law comes within this authorization because it, in effect, provides for different classes of membership, with different voting rights for each class, based upon the amount of contributions made by individual members and accepted by the Foundation. It operates equally among the members of each class, and we find nothing arbitrary or unreasonable in its application. ■ Nor, as claimed by plaintiff, does the by-law violate section 9500* of the Corporations Code, which relates to the powers to be exercised by directors. The by-law affects only the rights of the members as such and does not regulate their powers as directors. The three directors have equal voting powers when acting in that capacity.

Plaintiff next attacks the cancellation of his membership by asserting that no charges were filed against him, that he was given no opportunity to be heard in his defense and that under such circumstances the action taken was arbitrary and capricious. ■ The courts have recognized different rules of law relating to review of the action of an organization in expelling a member, depending on the nature of the particular group involved and the character and extent of the member's interest. For example, it has been held that one may not be expelled from an organization such as a labor union or a mutual benefit society, where property rights are attached to membership, without notice and a reasonable opportunity to defend against the charges made. (*Cason* v. *Glass Bottle Blowers Assn.*, 37 Cal.2d 134, 142 et seq. [231 P.2d 6]; *Taboada* v. *Sociedad Espanola de Beneficencia Mutua*, 191 Cal. 187, 191 et seq. [215 P. 673, 27 A.L.R. 1508].)

[4] The courts have always been reluctant to interfere with actions taken by religious organizations with respect to their internal affairs, and it has been commonly held that the expulsion of a member by a proper tribunal of such an association will not be reviewed where no property right is involved. (See *Bouldin* v. *Alexander*, 15 Wall. (U.S.) 131, 139-140 [21 L.Ed. 69]; *First English L. Church* v. *Evangelical L. Synod*, 135 F.2d 701, 703; *Mount Olive Primitive Baptist*

---

*Section 9500 of the Corporations Code provides: "Except as otherwise provided by the articles of incorporation or the by-laws, the powers of a nonprofit corporation shall be exercised, its property controlled, and its affairs conducted by a board of not less than three directors."

*Church* v. *Patrick,* 252 Ala. 672 [42 So.2d 617, 618-619];
*Ballew* v. *Deal,* 209 Ga. 609 [70 S.E.2d 767, 768-769]; *Kauff-*
*man* v. *Plank,* 214 Ill.App. 306, 310; *King* v. *Smith,* 106 Kan.
624 [189 P. 147, 148]; *Jenkins* v. *New Shiloh Baptist*
*Church,* 189 Md. 512 [56 A.2d 788, 791-793]; *Murr* v. *Max-*
*well,* (Mo.App.) 232 S.W.2d 219, 232-237; *Leeds* v. *Har-*
*rison,* 9 N.J. 202 [87 A.2d 713, 718-719]; 20 A.L.R.2d 421,
451 et seq.)

The Foundation is a religious organization and plaintiff
concededly has no property rights in it. His relationship
to it, however, differs in some respects from that of an ordinary
church member. As we have seen, the membership of the
Foundation is limited to three, and plaintiff was in a posi-
tion to exert much greater influence on the management of
the affairs of the group than could be exercised by a member
of a congregation which is unlimited in size. Moreover, the
personnel of the membership and directorship of the Founda-
tion is identical, and plaintiff ceased to be a director when
he was expelled as a member. A few courts have held that
the action of a religious body in expelling an officer, such
as a trustee, may be reviewed to the extent of determining
whether there has been notice and hearing, whether the
procedural rules of the organization have been followed, and
whether the action was taken in good faith. (See *Dittemore*
v. *Dickey,* 249 Mass. 95 [144 N.E. 57]; *In re Koch,* 257 N.Y.
318 [178 N.E. 545, 546].) This is apparently the minority
view, and we need not determine whether it should be followed
in this state, because, if we assume it to be the correct rule,
the record in this case shows compliance with the requirements.

It appears that on April 26, 1950, Miss Liddecoat gave
plaintiff a notice of cancellation of his membership and a
letter of explanation referring to conduct on his part which
had disturbed her. She had a lengthy conversation with
him, and it may be inferred that they discussed the matters
which caused her concern and that he fully understood the
objections to his conduct. At that time plaintiff told Miss
Liddecoat that he had received no notice of a meeting called
to consider termination of his membership. Thereafter the
secretary gave plaintiff written notice that a special meeting
of members would be held in California on August 21, 1950,
to consider the cancellation of his membership. Plaintiff
attended the meeting, after being assured that he would be
paid his expenses in traveling from his home in Chicago. The
minutes show that Miss Liddecoat read a prepared statement

which recited what had been done in April with respect to plaintiff's expulsion, and it may be inferred that the statement, which is not in the record, referred to the grounds for his expulsion. Miss Liddecoat, as president, called for a vote upon the cancellation of plaintiff's membership, and he was expelled by a majority of the votes cast. Plaintiff did not vote, and, although the minutes state that he was not allowed to vote, Miss Liddecoat testified that there was no effort to restrain him from speaking or registering his disapproval. During the meeting he remained silent and made no attempt to oppose the action.

An organization such as the Foundation need not adhere to the strict requirements imposed in legal proceedings, and the form of procedure used is immaterial if there has been substantial compliance with the rules of the group and the accused member has been afforded a reasonable opportunity to defend himself. (See *Cason* v. *Glass Bottle Blowers Assn.*, 37 Cal.2d 134, 143 [231 P.2d 6].) The rules of the Foundation were followed with respect to the August meeting at which plaintiff's membership was cancelled, and the evidence shows that the grounds urged for his expulsion were fully explained to him prior to the meeting and that he had ample opportunity to be heard.

The evidence is clearly sufficient to permit an inference that the cancellation of plaintiff's membership was made in good faith. It is apparent that the founders of the organization were of the opinion that harmony among the members was essential to the accomplishment of the purposes of the Foundation, and provision was made for the elimination of discord by permitting a member causing dissension to be removed by majority vote. Plaintiff made a number of suggestions which were disturbing to Miss Liddecoat, and it appears that his retention as a member would tend to disrupt the harmonious operation of the Foundation. There was evidence that his actions in and out of the meetings were inconsistent, and certain of his proposals appear to justify Miss Liddecoat's conclusion that there was "a lot of self-interest" in the suggestions which he made concerning the operation of the association. During meetings he made favorable comments on the way in which Mr. Webb, who was acting as general manager, conducted the affairs of the Foundation, but outside the meetings he urged the removal of Webb and the employment of himself as manager. He sought to purchase part of a ranch owned by the Foundation

and to acquire a $25,000 mortgage which had been made by the Foundation to secure operating funds. Plaintiff held religious services in Chicago and had a radio program in Des Moines through which he solicited funds to carry on missionary work in South America. He proposed to make California the headquarters for the solicitation of funds and to "channel" the money collected through the Foundation. Plaintiff continually urged that the Foundation be used for this purpose although, according to the evidence, the solicitation of money was contrary to the plan of the founders. His conduct could, of course, be deemed inappropriate to one in his position and might well have tended to create disharmony and to interfere with the peaceful operation of the Foundation. The trial court could reasonably conclude that the cancellation of plaintiff's membership was made in good faith with the honest belief that it would be in the best interests of the Foundation.

We come finally to plaintiff's contention that a written request by A. M. Johnson that plaintiff be elected a director and that he have active management in case of the death of Miss Liddecoat was binding on the Foundation and prevented the termination of plaintiff's membership. This request was in a paper which remained in A. M. Johnson's files until after his death and was then presented at the special meeting at which plaintiff was elected a director. Even if we should assume that the request had any binding effect, it cannot be reasonably construed as exempting plaintiff from the provision of the by-laws authorizing cancellation of membership.

The judgment is affirmed.

Shenk, J., Edmonds, J., Traynor, J., and Spence, J., concurred.

CARTER, J.—I dissent.

I agree with the holding that the giving of unequal voting rights in a nonprofit corporation is authorized by the California corporation law statutes and cannot, therefore, be declared to be against public policy, and also that A. M. Johnson's declaration of intention does not affect the present controversy. But I think this court should hold that a member of such a corporation may not be removed as such without cause or hearing. The by-laws here involved, while seemingly authorizing such, should be interpreted to mean that cause and hearing are required.

While it is true nonprofit corporations may make provision for the cancellation of memberships (Corp. Code, §§ 9402, 9608), yet those provisions are subject to the general rules with respect to the expulsion of members from unincorporated associations as summarized by this court in *Cason* v. *Glass Bottle Blowers Assn.,* 37 Cal.2d 134, 143 [231 P.2d 6]: "In cases of this type we must strive both to protect the rights of individual members and to avoid impairing the right of the union to govern itself. The courts will interfere with the decision of an association expelling one of its members if the rules of the association governing expulsion have not been observed or if the accused member *has not been afforded those rudimentary rights* which will give him a reasonable opportunity to defend against the charges made. . . . *It is a fundamental principle of justice that no man may be condemned or prejudiced in his rights without an opportunity to make his defense, and this principle is applicable not only to courts but also to labor unions and similar organizations.* . . . It is, of course, true that the refined and technical practices which have developed in the courts cannot be imposed upon the deliberations of workingmen, and the form of procedure is ordinarily immaterial if the accused is accorded a fair trial. . . . The union's procedure, however, *must be such as will afford the accused member substantial justice, and the requirements of a fair trial will be imposed even though the rules of the union fail to provide therefor.* . . . The authorities recognize that such a trial includes the right to notice of the charges, to confront and cross-examine the accusers, and to examine and refute the evidence." (Emphasis added; see also *Taboada* v. *Sociedad Espanola de Beneficencia Mutua,* 191 Cal. 187 [215 P. 673, 27 A.L.R. 1508]; *Otto* v. *Journeymen Tailors' P. & B. Union,* 75 Cal. 308 [17 P. 217, 7 Am.St.Rep. 156]; *Von Arx* v. *San Francisco G. Verein,* 113 Cal. 377 [45 P. 685]; *McConville* v. *Milk Wagon Drivers' Union,* 106 Cal.App. 696 [289 P. 852]; *Ellis* v. *American Fed. of Labor,* 48 Cal.App.2d 440 [120 P.2d 79]; *Knights of The Ku Klux Klan* v. *Francis,* 79 Cal. App. 383 [249 P. 539]; *Grand Grove etc. of Druids* v. *Garibaldi Grove etc. of Druids,* 105 Cal. 219 [38 P. 947]; *Supreme Lodge of The World* v. *Los Angeles Lodge No. 386,* 177 Cal. 132 [169 P. 1040]; *Grand Grove etc. of Druids* v. *Garibaldi Grove,* 130 Cal. 116 [62 P. 486, 80 Am.St.Rep. 80]; *De Mille* v. *American Fed. of Radio Artists,* 31 Cal.2d 139, 155 [187 P.2d 769, 175 A.L.R. 382]; *Lawson* v. *Hewell,* 118 Cal. 613

[50 P. 763, 49 L.R.A. 400]; *Smith* v. *Kern County Medical Assn.*, 19 Cal.2d 263 [120 P.2d 874]; *Haynes* v. *Annandale Golf Club*, 4 Cal.2d 28 [47 P.2d 470, 99 A.L.R. 1439], incorporated association; 21 A.L.R.2d 1397; 20 A.L.R.2d 344, 536; 37 Yale L.J. 368; 43 Harv.L.Rev. 993; 58 Yale L.J. 999.) Moreover, it has been said: ''The proceedings of the society, in order to be regular and legal, in effect, must, therefore, provide for notice to the accused and afford him an opportunity to be heard. . . .

''Indeed, *it has been held that even though the by-laws expressly provide for the expulsion of a member without a trial such a provision is void and an expulsion in pursuance of such a by-law is not binding.* . . .

''It has been held that in the absence of by-laws covering the subject that a member is entitled to a fair trial after due notice and that the procedure in such cases is to be analogous to ordinary judicial proceedings so far as necessary to render substantial justice.'' (Emphasis added; *Taboada* v. *Sociedad Espanola de Beneficencia Mutua, supra,* 191 Cal. 187, 191.)

The majority seems to intimate that there are no civil or property rights here involved and the Foundation is a religious organization and the courts will not interfere with its ecclesiastical affairs.

There can be no question that here property and civil rights are involved. While the members have no interest in the corporate assets, they as directors may receive a fee and expenses for attending meetings and their prestige and community standing may be adversely affected by a cancellation of their membership. Plaintiff was engaged independently in missionary and religious activities similar to those of the Foundation. By his arbitrary expulsion his standing and ability to carry on those activities will be affected. These may be ''personal rights'' but they are important. ''When we turn aside from the authorities and consider the actual human interests which suffer from an expulsion, it becomes apparent that in many cases they are chiefly interests of personality. The expelled club member finds his social reputation blasted, and is likely to be blackballed by other desirable clubs. The former trade unionist is ostracized by union members. A student like Shelley who has been excluded from college is branded for years to come, and deprived of intimate associations with places and companions. Excommunication from a church means loss of the opportunity to worship God in familiar surroundings with

a cherished ritual, and inflicts upon the devout believer lone-liness of spirit and perhaps the dread of eternal damnation. In comparison with such emotional deprivations, mere losses of property often appear trivial. It would seem natural that courts of equity should consider the desirability of remedying such injuries to personality, but they are hindered from doing so by the oft-repeated doctrine that equity protects only property rights. Dean Pound and others have shown the unsubstantial basis of this doctrine in the older cases, and its unfortunate effect in restricting the ability of courts to remedy many of the evils of modern life. Injunctions and similar flexible remedies of equity are much better suited than a speculative action for damages to protect interests of personality when the injuries to them are sufficiently serious to warrant the interference of the courts. The trend of the decisions today is toward such protection, even in the courts of last resort, and an examination of unreported cases in the lower courts collected from newspapers indicates that such courts are willing to go farther than the appellate judges in frankly protecting interests of personality.'' (43 Harv.L.Rev. 998.) It is settled in this state that equity will protect purely personal rights, hence the obstacle mentioned in the above quotation is removed. (*Orloff* v. *Los Angeles Turf Club,* 30 Cal.2d 110 [180 P.2d 321, 171 A.L.R. 913].) There is, therefore, no reason why plaintiff's rights here should not be protected.

As heretofore pointed out there are civil and property rights here involved and *there are no ecclesiastical disputes of any kind.* There are no questions of whether the correct creed or tenets are being followed or what such creeds are. It is simply a matter of whether a member of a nonprofit corporation may be removed without cause and hearing. This court said in *Rosicrucian Fellowship* v. *Rosicrucian etc. Church,* 39 Cal.2d 121, 131 [245 P.2d 481]: ''The general rule that courts will not interfere in religious societies with reference to their ecclesiastical practices stems from the separation of the church and state, but has always been qualified by the rule that civil and property rights would be adjudicated. . . . Whether an activity is ecclesiastical or involves property rights, especially when a decision on one necessarily involves consideration of the other, are difficult questions. Ecclesiastical matters include in the main, creeds and proper modes of exercising one's belief. While the principle that courts will not purport to exercise ecclesiastical

jurisdiction is settled as an abstract proposition, they will determine civil and property rights which depend essentially on the contracts of the parties as evinced by rules, regulations, practices and customs accepted and followed.'' Substantial authorities have stated that courts have jurisdiction to review the expulsion of a member of a religious organization to determine if it was in accordance with natural justice. (*Hughes* v. *North Clinton Baptist Church*, 75 N.J.L. 167 [67 A. 66]; *In re Koch*, 257 N.Y. 318 [178 N.E. 545]; *Fairchild* v. *Tillotson*, 118 Misc. 639 [195 N.Y.S. 39]; *Gray* v. *Christian Society*, 137 Mass. 329 [50 Am.Rep. 310]; *Moustakis* v. *Hellenic Orthodox Soc.*, 261 Mass. 462 [159 N.E. 453]; *Rock Dell Norwegian Evan. L. Congregation* v. *Mommsen*, 174 Minn. 207 [219 N.W. 88].) They stress that the by-laws are not to be construed to permit an expulsion unless absolutely necessary. The court said in *Gray* v. *Christian Society, supra,* 137 Mass. 329, 331: ''The necessity of complying with these requirements of common justice [hearing] has been so uniformly asserted, that only a few cases need be cited, in addition to those last referred to, to show how unwilling courts have been to admit that charters, by-laws, or rules could be intended to deprive a man of his membership without a hearing.'' This is especially true in the instant case where there is no question of religious belief or practices.

The situation is the same as if a social club or nonprofit corporation is involved. The rules are stated with supporting authority: ''One of the bases for court action as to an expulsion from a club is the fact that it was in violation of the principles of natural justice. . . .

''One of the denials of natural justice which will base court interference is that of a fair hearing or fair trial. . . .

''It has been held that a hearing must be afforded by the group exercising the expulsory power in all proceedings which may result in loss of property, position, or character, regardless of whether its committee has previously accorded a hearing and of whether the accused demands it, and the expulsion of a member without affording him a hearing is void. . . .

''[L]ack of proper notice to the accused member of hearing or trial is another violation of the principles of natural justice upon the basis of which court action may take place. . . .

''It is generally held that a member against whom expulsion proceedings are brought is entitled to notice of the charge against him, . . .

"A bylaw, rule, or other regulation of a club permitting expulsion of a member without notice of the charges against him would be invalid as being inconsistent with law, and notice that a member's conduct in a certain class of transactions is to be investigated is not sufficient to base expulsion in the absence of any specific charge." (20 A.L.R.2d 352.)

The majority opinion states that plaintiff had a notice and hearing and there was cause for dismissal under the evidence. The trial court made no clear-cut finding on the first question and this court should not in effect make one as the evidence is capable of different constructions. There was no pretense at the meetings at which plaintiff was expelled that a hearing was being held to consider charges. No charges were made nor evidence given at those meetings. The only thing done was the taking of a vote on the question of expulsion. To justify its position that there was cause for plaintiff's expulsion the majority relies on evidence introduced at the trial of the action. To have a proper hearing, there should have been a charge and notice of a hearing thereon and evidence should have been given at the hearing and directed to the board members. In other words plaintiff was entitled to know the nature of the charge against him and the time and place fixed for a hearing thereon so that he might be prepared to meet any evidence presented in support of such charge. If no such evidence was presented, the charge must necessarily fail. Here there was no charge, notice, hearing or evidence as a basis for plaintiff's expulsion. The fact that evidence was presented at the trial of the action brought for the purpose of nullifying the invalid expulsion order does not give such order validity.

I would, therefore, reverse the judgment.

Appellant's petition for a rehearing was denied November 24, 1954. Carter, J., was of the opinion that the petition should be granted.