## FAWCETT *vs.* CHARLES.

A *county medical society* has not the power to expel or amove a member for the cause that he did not possess the requisite qualifications, and obtained his admission by false pretences ; their doings in such a case are without jurisdiction, and a resolution adopted and entered among their proceedings expelling a member for such cause is a *libel*, and the member introducing it is liable to an action. The remedy in such case, *it seems,* is by *quo warranto.*

Such society, being a *body corporate,* has the power of amotion or expulsion of its members, as an *incident* to its constitution; the power, however, cannot be exercised without a previous conviction on indictment in a criminal court for the offence charged, *except* where the offence relates merely to the official or corporate character of the accused, and amounts to a breach of the condition, expressly or tacitly annexed to his franchise or office.

Whether the power conferred upon *county judges* to expel a member of a medical society, or to suspend him from practice for a limited period, when charges are exhibited against him for *immoral conduct or habits,* deprives the society of its common law power, *quere.*

Whether a *private corporation* has the power to amove a *member* of the corporation, *quere ;* its power to remove an *officer* for cause is unquestionable.

THIS was an action for a *libel,* tried at the Allegany circuit, before the Hon. ADDISON GARDINER, one of the circuit judges.

The plaintiff was admitted a member of *Allegany County Medical Society,* in February, 1831, on the production of a *diploma,* issued by the *Royal College of Surgeons* of the city of Edinburgh, stating that he was qualified to practice *surgery.* In the autumn of that year, the defendant, a practising physician of Allegany, stated to a member of that society, that he had just ascertained that the plaintiff's *diploma* did not authorize him to practice *physic* and *surgery ;* that by the laws of the state, he must be authorized to do both, to entitle himself to admission as a member of a medical society; that they had been imposed upon, and he meant to move to rescind the resolution admitting the plaintiff as a member of the county medical society. Accordingly, at a meeting of the Allegany County Medical Society, in February, 1832, the defendant introduced a resolution in these words, which was approved of

and adopted by the society : " Whereas Henry Fawcett, by false pretensions, became a member of the Allegany County Medical Society : therefore resolved, that we re-consider the vote taken at the last annual meeting, in February, 1831, making Henry Fawcett a member of this society, and that he be no longer considered a member of the Allegany County Medical Society, until he qualifies himself to practice physic, &c. according to the laws of this state." For the publication of which resolution this action was brought. The declaration contained several counts, charging its publication generally, and also its publication in a newspaper called the *Angelica Republican.* On the trial of the cause, the plaintiff proved his admission as a member of the society in 1831, and the introduction of the resolution into the society by the defendant ; but failed in proving its publication in the newspaper by the agency of the defendant. On this evidence, the plaintiff rested. The defendant moved for a *nonsuit,* on the grounds. 1. That the medical society had jurisdiction of the subject matter, and the resolution having been offered in the regular course of business of the society by a member thereof, it was a privileged communication ; 2. That the publication in the newspaper being according to the ordinary course and practice of the society in publishing their proceedings, and so it was proved, it was equally privileged in its publication *within the walls of the society* ; 3. That it had not been proved that the publication in the *newspaper* had taken place, by direction of the defendant ; and 4. That there was no evidence of express malice, and the circumstances of the case repelled the inference of malice. The judge refused to nonsuit the plaintiff. The defendant thereupon produced the diploma of the plaintiff, granted by the college of surgeons at Edinburgh, and which it was proved was exhibited by the plaintiff at the time of his application for admission as a member of the society. It was in *latin ;* and it was proved, that though it was handed about and inspected by the members of the society, the greater part of them could not translate it. It was, however, translated on the trial, and found to be only a diploma authorizing the practice of *surgery.* The judge charged the jury that the medical society had not the power

to deprive a member of his privileges ; that all they can do is to determine upon his qualifications when he applies for admission ; that the member can be deprived of his privileges only by the judges of the county courts, on presentation of charges against him, and that the defendant therefore could derive no protection from the resolution having been adopted by the society ; and if they believed that the defendant acted from express malice, he would be liable to damages, though the medical society had jurisdiction of the matter. He further instructed them that the publication was libellous, and the defendant liable, unless the communication was privileged, as being made in good faith to obtain redress from a tribunal having jurisdiction of the subject matter ; that although they had heard his opinion, on the motion for a nonsuit, as to the right of the medical society to expel a member, yet it was their province to judge of the law as well as the fact ; and if *they believed* that the society had the right to pass such a resolution against one of its members, and that the circumstances of the case repelled the inference of malice, they ought to find a verdict for the defendant ; but if they thought that the medical society had exceeded its jurisdiction, or that the defendant acted from malicious motives in publishing the libel, they should find a verdict for the plaintiff, The jury found a verdict for the plaintiff, with $150 damages. The defendant made a case, and moved for a new trial.

*A. Taber*, for the defendant.

*S. Stevens*, for the plaintiff.

*By the court*, NELSON, J. The act of 1813, 3 *R. S.* 304, created the several medical societies formed in the counties of this state *bodies corporate*, by the names of the medical society of the county where such societies were formed, and by that name were made capable of suing and being sued, pleading and being impleaded, &c. and allowed to each a common seal. They are authorized to hold real and personal estate ; to examine students for admission to practice ; to grant diplomas ; to make by-laws and regulations relative to the affairs,

NEW YORK,
May, 1835.

Fawcett
v.
Charles.

concerns and property of the society; and to the admission and *expulsion of members*, &c.; and it is made the duty of the secretary of each society to provide a book, in which he shall make an entry of all the resolutions and proceedings which may be had from time to time, &c. By the general regulations concerning the practice of physic and surgery in this state, 1 *R. S.* 452, § 3, 7, it is provided, that if there shall be preferred to any county medical society specific charges against any member thereof, of *gross ignorance* or *misconduct in his profession*, or of *immoral conduct or habits*, and two thirds of the members shall be of opinion that the charges are well founded, he shall be suspended by the society from practice, and tried before the judges of the county court.

No express power of expulsion of a member is given to these societies in the act of 1813, though it is recognized as belonging to them. Since the decision of the case of *The King* v. *Richardson*, 1 *Burr.*517,541, it has been considered settled law, that a corporation aggregate has the power, as *incidental* to its constitution, of removing an officer or disfranchising a corporator, for reasonable cause. 2 *Str.* 819. *Doug.* 149. 2 *Bacon*, 21, 2 *Kent's Comm.* 297. Such power has however, been carefully guarded and defined, and can be exercised only, 1. Where the offence has no immediate relation to the official or corporate character of the party, but is in itself of so infamous a nature as to render the offender unfit to execute any public franchise; 2. Where it relates merely to his official or corporate character, and amounts to breaches of the condition, tacitly or expressly annexed to his franchise or office; and 3. Where the offence is of a mixed nature, being not only against his official or corporate duty, but also a matter indictable at common law. As to the first class, the corporation cannot remove or disfranchise without a previous conviction at common law, 1 *Burr.* 538; 2 *Bacon*, 26; and as regards the third, it is also yet questionable if that offence is sufficient to justify the exercise of his power till after a previous conviction. 2 *Burr.* 742, *Gould, counsel, arguendo and cases cited.* 2 *Bacon*, 26. The difficulty in respect to this class is the possibility of a difference of determination in the two jurisdictions, as the member may be removed upon the

same facts upon which he may afterwards be acquitted on a

trial by jury. The acquittal would stamp by the highest authority the justice of the removal, and seems to require a restoration. Where the offence is merely against the official oath of the party, and the good government of the corporation, there is no doubt it possesses the power to try and remove or disfranchise the offender. It is a power deemed essential to the fulfilment of the object of the institution, and the orderly and faithful administration of its affairs; and cannot be considered very dangerous to the rights of the corporators, when so cautiously guarded, and subject also to review by the writ of certiorari or mandamus. It is not now necessary to say that the power to *disfranchise* a *member* belongs to a private corporation. There might be a difficulty attending the exercise of it, growing out of his individual rights and the nature and purpose of these institutions, which would be incompatable with the existence of it. I perceive no objection, however, to the removal of an *officer* of these institutions for cause. That power seems indispensible to the protection of the rights of the corporation, which might otherwise be put in jeopardy.

The plaintiff was disfranchised in this case, because he had procured himself to be admitted a member of the medical society of Allegany, by means of false pretences and without the legal qualifications. This is the offence put forth, and upon which the corporation acted. It is obvious it does not come within any of the specified classes giving jurisdiction to that body. It was no breach of his oath, for he had taken none; nor of his official duty, for he was not yet a member. Besides, the point has been expressly adjudged, that the power of disfranchisement or amotion cannot be exercised for a defect of original qualification; that can be inquired into only by a *quo warranto. Doug.* 80, 85. 2 *Bacon,* 23. It is therefore clear that the medical society had no jurisdiction over the case submitted to them, and that their proceedings were *coram non judice*—so much so that the party instituting these proceedings, at least, cannot avail himself of the very qualified power over the subject matter thus incidentally vested, to escape responsibility.

NEW YORK,
May, 1835.

Fawcett
v.
Charles.

It will be seen, from the above view, the case specified in the revised statutes, 1 *R. S.* 452, § 3, 7, and which are brought under the cognizance of the judges of the county courts, do not touch this *incidental power* of the society, because none of them come within either class of the offences to which it is limited. I make this remark, because, on the argument, the statute was supposed materially to effect the question in this case. One qualification of the above observation should be made : the terms, *immoral conduct or habits,* there used, in their broadest sense, may include an offence of so infamous a nature as to bring it within the first class ; and then, upon an indictment and conviction, the society would have power to amove. It may be well questioned, however, whether the statute should be construed as superseding the exercise of this power in such a case. It is not now important to express a decided opinion on that point.

The conclusion at which I have arrived sustains the action. The resolution was libellous, and not privileged. The introduction of it at the meeting of the society was evidence enough of its publication.

The judge, in charging the jury, advised them that it was their province to decide upon the law as well as the fact, and put the question of the jurisdiction of the society" to them under that impression. It was undoubtedly a question of law, and unless he was right in his general position, the charge was erroneous. The learned judge must have had in his mind the provision of the constitution, *art.* 7, § 8 ; but that is confined to *criminal prosecutions* or indictments, and was never understood as applying to *civil suits.* The subsequent clause is decisive of the question ; for if *prosecutions* meant civil proceedings, the truth would be no defence in these actions, unless published with good motives and for justifiable ends. This error, however, was in favor of the defendant, and presents no ground for a new trial.

The truth of the libel does not appear to have been made a question upon the evidence, as it is not noticed in the judge's charge, nor was his intention directed to the point. If it had been, it would have been his duty to have submitted it to the jury. But we are bound to presume the point was

abandoned ; and though we think the case was placed erro-
neously before the jury in many respects, the errors being
all in favor of the defendant, a new trial must be denied.