(70 Misc. Rep. 615.)

EWALD v. MEDICAL SOCIETY OF NEW YORK COUNTY et al.

(Supreme Court, Appellate Division, First Department. April 7, 1911.)

1. PHYSICIANS AND SURGEONS (§ 9*)—MEDICAL SOCIETIES—PREMATURE ACTION BY MEMBER.

Plaintiff, a member of a medical society, was suspended for misconduct and afterwards reinstated, and two days thereafter tendered his resignation, which was not accepted, and three days after the tender he was served with a notice of charges filed against him, and that a meeting would be held to consider them. *Held* that, if plaintiff was still a member, his suit against the society to restrain them from trying him on said charges was premature.

[Ed. Note.—For other cases, see Physicians and Surgeons, Cent. Dig. § 13; Dec. Dig. § 9.*]

2. PHYSICIANS AND SURGEONS (§ 9*)—MEDICAL SOCIETIES—RESIGNATION—NECESSITY—NECESSITY OF ACCEPTANCE.

Where the by-laws of a medical society provided that resignations should be in writing, and, if accepted, should sever the member's connection with the society, that all resignations should be referred to the Comitia Minora at its first meeting after being received, but that no resignation from a member under charges should be accepted, *held*, that an acceptance of a resignation was necessary to terminate membership.

[Ed. Note.—For other cases, see Physicians and Surgeons, Cent. Dig. § 13; Dec. Dig. § 9.*]

3. PHYSICIANS AND SURGEONS (§ 9*)—MEDICAL SOCIETIES—RESIGNATION UNDER CHARGES.

Charges were filed against a member of a medical society for misconduct, but a copy of them was not served on him at the time, because he was then under suspension for another offense. Later his suspension was remitted, and he was restored to good standing, whereupon he immediately tendered his resignation. Three days thereafter a copy of the charges was served on him, with a notice of hearing. *Held*, that he was under charges when he attempted to resign within a by-law of the society prohibiting acceptance of the resignation of any member under charges.

[Ed. Note.—For other cases, see Physicians and Surgeons, Cent. Dig. § 13; Dec. Dig. § 9.*]

4. CONSTITUTIONAL LAW (§ 126*)—OBLIGATION OF CONTRACTS—AMENDMENT OF CORPORATION LAW—MEDICAL SOCIETIES.

Laws 1806, c. 138, authorized the incorporation of medical societies in each county to regulate the practice of physic and surgery, and required a diploma from them as a condition to the right to practice. Such societies were given the power to make by-laws, etc., as to the admission and expulsion of members, and the right to alter or repeal the act was expressly reserved to the Legislature. Under this law, the right to expel or refuse to admit to membership was much limited by decision of the courts, and thereafter Laws 1866, c. 445, was enacted by which any county medical society was authorized to establish such rules to govern its members as it saw fit, and was given power to enforce discipline among its members and obedience to its rules, and to otherwise discipline members as was deemed for the best interests of the society. *Held*, that the act of 1866 was within the power to amend reserved in the act of 1806,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and was obviously intended to enlarge the powers of medical societies as defined theretofore by the courts.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 325, 366–369; Dec. Dig. § 126.*]

5. CONSTITUTIONAL LAW (§ 42*)—VALIDITY OF STATUTE—WHO MAY QUESTION.
   Laws 1806, c. 138, provided for the incorporation of county medical societies with certain powers to control the admission and expulsion of members, which were construed narrowly by the courts. Laws 1866, c. 445, gave such societies much wider powers to make rules to govern the conduct of its members. *Held*, that one who became a member of a medical society in 1904 could not object that the act of 1866 was an impairment of the contract between the state and the society made by the act of 1806, where the society raised no such objection.

   [Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 39, 40; Dec. Dig. § 42.*]

6. PHYSICIANS AND SURGEONS (§ 9*)—MEDICAL SOCIETIES—MEMBERS—EXPULSION.
   Under the act of 1806 (2 Rev. Laws 1813, c. 94), authorizing the incorporation of medical societies for the diffusion of true science and particularly of knowledge of the healing art, to examine and license physicians and surgeons to practice and to regulate the practice of physic and surgery with power to make such by-laws, rules, and regulations relative to the admission and expulsion of members as they shall think fit, such a society has the power to adopt by-law forbidding the acceptance of a resignation of any member while under charges, and, in compliance therewith, to refuse to accept the resignation of a member while under charges of altering hospital records so as to untruly show that he had performed certain operations, and to expel him therefor, especially as every member, on becoming such, agreed to submit to the discipline of the society for any act unfavorably affecting the character, dignity, or interest of the profession or the society.

   [Ed. Note.—For other cases, see Physicians and Surgeons, Dec. Dig. § 9.*]

Appeal from Special Term, New York County.

Action by Louis A. Ewald against the Medical Society of New York County and others. From an order of the Special Term continuing an injunction, defendants appeal. Reversed, and motion to continue the injunction denied.

Argued before INGRAHAM, P. J., and McLAUGHLIN, SCOTT, MILLER, and DOWLING, JJ.

Almuth C. Vandiver, for appellants.

Daniel P. Hays and Samuel I. Frankenstein, for respondent.

MILLER, J. The plaintiff became a member of the defendant Medical Society in January, 1904. On March 10, 1910, charges were preferred against him by a number of physicians to the effect that in a scientific article, contributed by him to be published by a hospital of whose staff he was a member, he had described certain operations as having been performed by him, which in fact he had never performed. He was tried and found guilty by the defendant's board of censors, and was suspended from membership until June 1, 1911. On September 30, 1910, written charges were filed with the president of the defendant society by one of its members to the effect that during the pendency of the first charges the plaintiff and another physician

had changed the records of the Suydenham Hospital for the purpose of substantiating the statements made by plaintiff in the said article, which acts, it was claimed, unfavorably affected the dignity, character, and interest of the medical profession, of the defendant society, and of its members. A copy of said charges was not then served upon the plaintiff, as he was then under suspension. His associate, however, was tried on them, and he was present and testified at the trial, and heard the charges read. The plaintiff's said associate was found guilty, and his expulsion recommended by the censors on December 12, 1910, and on that day a resolution of the society was adopted restoring the plaintiff to membership in good standing on and after that date. On December 14, 1910, the plaintiff tendered his resignation, which was not accepted, and on December 17, 1910, he was served with a notice of said charges and that a meeting would be held on December 30th following for the purpose of considering them. Whereupon this action was brought.

[1] If the plaintiff is still a member of the society, this action is premature. See Moyse v. N. Y. Cotton Exchange, 128 N. Y. Supp. 112, and cases cited by Mr. Justice Scott, decided by this court in this department March 10, 1911, not yet officially reported. It may well be doubted whether equity will entertain jurisdiction at the suit of a nonmember to restrain the proceedings of a membership corporation like the defendant society. The plaintiff may ignore the proceeding, and, if he is libelled, sue for damages. See Fawcett v. Charles, 13 Wend. 473. However, assuming without deciding that upon the plaintiff's theory the case is one for equitable cognizance, we are of the opinion that the injunction should have been denied, for the reason that the defendants have jurisdiction to try the plaintiff on the charges preferred.

In his application for membership the plaintiff expressly agreed, "if elected, to comply with all rules, regulations and by-laws passed by society, or adopted for its government." Among the pertinent provisions of the defendant's by-laws the following may be noted:

"All resignations shall be in writing and shall be sent to the secretary and referred to the Comitia Minora at its first meeting after their receipt. If accepted, the member thereby severs all connection with the Medical Society of the County of New York, the First District Branch, and the Medical Society of the State of New York, and relinquishes all right and title to any share in their property. No resignation shall be accepted from a member owing dues or assessments or under charges." Chapter 1, art. 6.

"The censors shall take cognizance of all charges preferred against a member. Charges against a member shall be presented to the president in writing, and by him referred to the censors, who shall meet, examine the same, and the evidence thereon." Chapter 5, art. 4.

"There shall be three degrees of discipline: censure, suspension and expulsion." Chapter 5, art. 6.

"The constitution, by-laws, and resolutions of the society, and the constitution, by-laws, rules and regulations of the Medical Society of the State of New York, which have reference to county societies, shall be binding on the membership of this society; and any intentional violation or disregard of the same shall be cause for discipline. The commission of any act which unfavorably affects the character, dignity or interests of the medical profession, of this society, or any one or more of its members, shall also be cause for discipline." Chapter 5, art. 10.

When the plaintiff became a member of the defendant society, its by-laws provided for amendment, alteration, or addition thereto by a majority vote of its members at annual meetings. The plaintiff does not question the regularity of the adoption of the present by-laws or deny that he is bound by them, provided the defendant had the power to adopt them. His contention, in brief, is that the society has no power to retain a member for the sole purpose of trying him on charges and expelling him; that any by-law purporting to give it that power is beyond the chartered powers of the corporation, and therefore not binding upon its members; that he was not "under charges" within the meaning of said chapter 1, art. 6, when he filed his resignation, wherefore it took effect at once without formal acceptance; that the defendants have no power to try the plaintiff on the charges preferred, and that in any event the restoration of the plaintiff to membership in good standing was a waiver of pending charges and a bar to further proceedings thereon.

[2] If the by-laws were silent on the subject the filing of a resignation by a member would doubtless terminate his membership, and it is probably true, as contended by the plaintiff, that the by-law in question limits the power of the Comitia Minora to refuse the acceptance of a resignation to the specified grounds. Still the by-law contemplates that an acceptance of a resignation is necessary to terminate a membership, and it is undisputed that the Comitia Minora had no meeting after the filing of the plaintiff's resignation and before notice of the charges was served upon him.

[3] Moreover, we are of the opinion that he was "under charges" when he filed his resignation, and from the time that written charges were filed with the president, and the mere fact that the censors had not yet served a copy of the charges on the plaintiff is immaterial (see People ex rel. Eakins v. Roosevelt, 12 Misc. Rep. 622, 34 N. Y. Supp. 228; Id., 14 Misc. Rep. 531, 35 N. Y. Supp. 1085; Id., 149 N. Y. 574, 43 N. E. 989), as the by-law in question was evidently adopted to prevent a member against whom charges had been preferred from evading the consequences of his offense by resigning in advance of a trial.

The learned justice at Special Term was of the opinion that the original act of incorporation (chapter 138, Laws 1806) did not confer power on the defendant to pass the said by-law, and that within the principle of Trustees of Dartmouth College v. Woodward, 4 Wheat. 518, 4 L. Ed. 629, the subsequent acts of the Legislature relating to medical societies, even though accepted by the defendant society, could not have the effect to alter or amend the original charter. We think that that view is based on a misconception of the scope and purpose of the original act and of the application of the famous Dartmouth College Case. The said act of 1806 was entitled "An act to incorporate medical societies for the purpose of regulating the practice of physic and surgery in this state." It provided that the physicians and surgeons in the several counties of the state might meet, and, being not less than five in number, organize by the election of officers, and that said societies so organized should thereupon become "bodies

corporate and politic." It also provided for the organization of a corporation by the name of "The Medical Society of the State of New York." It empowered the societies thus organized to examine students and give diplomas under the hand of the president and the seal of the society, which should entitle the holder to practice physic or surgery, and provided that, after the 1st day of the following September, no person should commence the practice of physic or surgery without having passed the examination and received a diploma from one of the medical societies thus established; that it should be lawful for the societies established by the act "to make such by-laws, rules and regulations * * * relative to the admission and expulsion of members * * * as they or a majority of the members at their annual meeting shall think fit and proper: Provided, that such by-laws, rules and regulations * * * be not contrary to nor inconsistent with the Constitution or laws of this state or of the United States, * * * ; that it should be within the power of the Legislature "to alter, modify or repeal this act, whenever they shall deem it necessary or expedient." It also repealed a former act entitled, "An act to regulate the practice of physic and surgery in this state," evidently referring to an earlier act, by which the chancellor, judge of the Supreme Court or common pleas, or Master in Chancery was authorized to license physicians to practice. See chapter 45, Laws 1797.

It was decided by the Supreme Court in 1835 that the power to disfranchise a member conferred by the act of 1806, which was revised in 1813 (chapter 94, 2 Rev. Laws 1813), could only be exercised upon common-law grounds, which did not include original disqualification for membership. Fawcett v. Charles, supra. The case of People ex rel. Gray v. Medical Society, 24 Barb. 570, was decided in 1857. The proposition that a member could only be disfranchised on common-law grounds was reiterated, and it was held that a regulation of a medical society, prescribing a tariff of fees for medical services to be performed by its members, was unauthorized, and that a violation of such regulation did not furnish ground for the disfranchisement of a member. In 1865 the Court of Appeals decided that a licensed physician could not be denied membership in a county medical society for not having conformed to the conventional rules of the society at a period antecedent to his application, and that there was no power of expulsion, except on common-law grounds, i. e.: (1) Violation of duty to the society, as a member of the corporation; (2) offenses as a citizen against the laws of the country; (3) breach of duty in respect alike to the corporation and the laws. People ex rel. Bartlett v. Medical Society, 32 N. Y. 187. In 1866 the Legislature passed an act, being chapter 445 of the laws of that year, which provided that it should be lawful for any County Medical Society "to establish such rules and regulations for the government of its members as they may deem fit," etc; that "each County Medical Society shall have full power and authority to enforce discipline among its members and obedience to its rules and regulations, with power to otherwise discipline, as they may deem most advisable for the best interest of said society," and that any member grieved by the action of a County Medical Society

should have the right to appeal to the State Medical Society. The said provisions were substantially incorporated in the present membership corporation law. See sections 8, 210–214, c. 35, Consol. Laws (chapter 40, Laws 1909).

[4] The act of 1866 was obviously intended to enlarge the powers of medical societies, as defined by the said decisions of the courts, and the right to amend, alter, or repeal was expressly reserved in the original act. Moreover, the Dartmouth College Case has no application to this case for still another reason.

[5] The plaintiff was not a party to the contract upon the incorporation of the defendant society in 1806. It has not objected to the subsequent acts of the Legislature having the effect to amend its act of incorporation, but, on the contrary, has accepted said amendments, and has adopted by-laws upon the authority thereof. The plaintiff's franchise as a member was not acquired by him until 1904. His contract is to be construed according to the law in force when it was made.

[6] Moreover, the act of 1806 is quite broad enough to justify all that the defendant society has undertaken to do. It was incorporated not alone "to contribute to the diffusion of true science and particularly to the knowledge of the healing arts," as appears to have been supposed by the learned justice at Special Term, but to examine and license physicians and surgeons to practice and to regulate the practice of physic and surgery, and the former act on that subject was repealed. The power to pass by-laws relative to the admission and expulsion of members, though conferred in general terms, is to be construed with reference to those broad general powers. Every licensed physician of good character and having the necessary qualifications was entitled to membership (People ex rel. Bartlett v. Medical Society), but surely the society was not bound to retain in its membership the charlatan, the quack or the fraud, and thereby to certify to his professional standing. Moreover; its relation to the public and to the profession is such that the mere severing of membership of one guilty of an offense meriting discipline would not serve its corporate purposes. County Medical Societies are much more than mere private corporations or social clubs. The scope of the original act of incorporation and of the subsequent acts relating to them shows that they were intended to discharge important duties to the public. The fact that the power to license physicians and surgeons has been devolved upon the board of regents (section 169, c. 45, Public Health Law; Consol. Laws 1909 [chapter 49; Laws 1909]) does not affect the question. It seems plain, therefore, that a member on his admission to the society assumes an obligation, not only to conform to the rules and regulations of the society respecting his immediate relations to it, but as well to observe its standards of professional ethics, and that a breach of that obligation in any respect involves a violation of duty to the society. Certainly any discreditable act of a member in his professional relations tends to discredit the society. The plaintiff agreed upon becoming a member to submit to the discipline of the society for any act unfavorably affecting "the

character, dignity or interest of the medical profession, or of the society." The by-laws, rules, and regulations of the society would have no sanction if its discipline could be evaded by a resignation. Whereupon it follows, not only that the society has the power to expel for unprofessional conduct, not directly involving the relations of the member as such to the society, but that it also had the power to pass the by-law that no member should be permitted to resign under charges.

It is probable that the defendant could not try the plaintiff while under charges. It could have waited until the period of suspension expired, or it could have revoked the suspension. Restoration is not the same as original admission to membership. The plaintiff was at all times a member. His rights as such were temporarily in abeyance. After restoration, he probably could not again be tried upon the charges on which he was suspended. But the present charges are entirely different. He was suspended for an act of charlatanry. He is now charged with forging hospital records to conceal the nature of that act. His guilt of the latter charge cannot be assumed in advance of a trial, and it was, of course, not passed upon when his suspension was removed.

While I have discussed the case from the standpoint of the plaintiff's rights and obligations as a member of the defendant society, I am far from suggesting that a court of equity should enjoin a County Medical Society from inquiring into unprofessional conduct either of members or of nonmembers.

The order should be reversed, with $10 costs and disbursements, and the motion to continue the injunction denied, with costs. All concur.