In the Matter of FLORA M. KOCH, Respondent, et al., as Trustees of FIFTH CHURCH OF CHRIST, SCIENTIST, NEW YORK.

RALPH WADSWORTH et al., Appellants.

(Argued September 28, 1931; decided November 17, 1931.)

*Robert McC. Marsh, George H. Porter* and *Meyer B. Cushner* for appellants. Defects, if any, in the notice of meeting were waived by petitioner's appearance and participation without objection. (*Beardsley* v. *Johnson,* 121 N. Y. 224; *Havens* v. *King,* 221 App. Div. 475; 250 N. Y. 617; *People ex rel. Rice* v. *Board of Trade,* 80 Ill. 134; *Sale* v. *First Baptist Church,* 62 Iowa, 26; *People* v. *Runkle,* 9 Johns. 147; *People ex rel. Brewster* v. *Old Guard,* 87 App. Div. 478; *People ex rel. Schults* v. *Love,* 199 App. Div. 815; *People ex rel. Deverell* v. *Musical Protec. Union,* 118 N. Y. 101; *Williamson* v. *Randolph,* 48 Misc. Rep. 96; *People ex rel. Baker* v. *Coachmen's Union,* 4 Misc. Rep. 424; *Fritz* v. *Knaub,* 57 Misc. Rep. 405; *Pepe* v. *Missanellese Society,* 141 Misc. Rep. 7; *Matter of Sperry,* 116 Penn. St. 391; *Moore* v. *National Council,* 65 Kan. 452.) The Appellate Division erred in holding a

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

two-thirds vote necessary for removal. (*Matter of Brearton*, 44 Misc. Rep. 247; *United States* v. *Ballin*, 144 U. S. 1; *Attorney-General* v. *Shepherd*, 62 N. H. 383; *Woolcott* v. *Shubert*, 217 N. Y. 212; *People* v. *Palmer*, 109 N. Y. 110; *Weinburgh* v. *Union Street Ry. Advertising Co.*, 55 N. J. Eq. 640; *State ex rel. Attorney-General* v. *Conklin*, 34 Wis. 21; *Bachmann* v. *New Yorker Deutcher Arbiter Bund*, 64 How. Pr. 442.) The membership of the church had power to remove trustees for cause which was clearly adequate. (*Fawcett* v. *Charles*, 13 Wend. 473; *Toledo Traction, L. & P. Co.* v. *Smith*, 205 Fed. Rep. 643; 2 Kent's Commentaries [14th ed.], 297; *Barton* v. *Fitzpatrick*, 187 Ala. 273; Angell & Ames on Corporations [10th ed.], 439, 450; 34 Cyc. 1133; 14A Corpus Juris, § 1837; *Fells* v. *Katz*, 256 N. Y. 67; *People ex rel. Manice* v. *Powell*, 201 N. Y. 194; *Matter of Korff*, 198 App. Div. 553.)

*Martin Conboy, Frederick Hemley* and *Joseph Fischer* for respondent. The trustees elected for a definite term fixed by statute could not be removed from office without cause until the end of their respective terms. (*People ex rel. Manice* v. *Powell*, 201 N. Y. 194; *Matter of Korff*, 198 App. Div. 553; *Raub* v. *Gerken*, 127 App. Div. 42; *Matter of Automotive Mfrs. Assn., Inc.*, 120 Misc. Rep. 405.) No cause was shown for the removal of the trustees from their offices. (*People ex rel. Manice* v. *Powell*, 201 N. Y. 194; *Manson* v. *Curtis*, 223 N. Y. 313; *Matter of Korff*, 198 App. Div. 553, 3 Fletcher Cyclopedia of Corporations, 3074; *People ex rel. Floyd* v. *Conklin*, 7 Hun, 188.) Since the notice of the corporate meeting did not specify that charges against the trustees were to be heard, the meeting was without jurisdiction to hear such charges. (*People ex rel. Holmstrom* v. *I. D. B. B. Union*, 164 App. Div. 267; *Matter of Bandanza*, 132 Misc. Rep. 817; *People ex rel. Meads* v. *McDonough*, 8 App. Div. 591; *People ex rel. Meads* v. *Alpha Lodge*,

8 App. Div. 591; *People ex rel. Stephens* v. *Greenwood Lake Assn.*, 63 Hun, 633; *Goller* v. *Stubenhaus*, 77 Misc. Rep. 29.)

KELLOGG, J. The petitioners were trustees of Fifth Church of Christ, Scientist, a religious corporation. Before their terms of office had expired, the members of the corporation, at a regular corporate meeting, passed a resolution purporting to remove the petitioners from office for a cause stated. The three individual appellants were thereupon appointed, by the remaining members of the board of trustees, to fill the vacancies thus created. Thereafter these proceedings for reinstatement were instituted by the petitioners. The Appellate Division has found that the resolution adopted by the members was not effectual to accomplish their removal, for the reasons: (1) No power had been conferred by statute upon the corporation to remove its trustees before the expiration of their terms; (2) the notice, calling the meeting, did not advise members that the removal of the petitioners for cause would be considered; (3) the resolution was not adopted by a two-thirds vote.

Frequently the authorities neglect properly to distinguish between *amotion*, the power to remove a corporate officer, and *disenfranchisement*, the power to expel from membership. (2 Kent's Commentaries, 298; Niblack on Mutual Benefit Societies, § 34.) " The power of amotion or disenfranchisement of a member for a reasonable cause, is a power necessarily incident to every corporation." (2 Kent, 297.) This has been the rule ever since the decision in *Lord Bruce's Case* (2 Strange, 819). In that case, decided in the year 1728, the King's Bench stated: " Besides, the modern opinion has been, that a power of amotion is incident to the corporation, though *Bagg's* case seems contrary. II Co. 93." In *Rex* v. *Richardson* (1 Burr. 517) Lord MANSFIELD, writing for the same court, and referring to the holding in *Lord Bruce's* case,

said: " We all think this modern opinion is right. It is necessary to the good order and government of corporate bodies, that there should be such a power " (p. 539). In *Fawcett* v. *Charles* (13 Wend. 473) the court, through NELSON, J., said: " Since the decision of the case of *The King* v. *Richardson*, 1 *Burr*. 517, 541, it has been considered settled law, that a corporation aggregate has the power, as incidental to its constitution, of removing an officer or disfranchising a corporator, for reasonable cause." Present day opinion still voices this " modern " doctrine. (*Toledo Traction, Light & Power Co.* v. *Smith*, 205 Fed. Rep. 643, 646; *Barton* v. *Fitzpatrick*, 187 Ala. 273; *State ex rel. Danforth* v. *Kuehn*, 34 Wis. 229; *Fells* v. *Katz*, 256 N. Y. 67; *Polin* v. *Kaplan*, 257 N. Y. 277; Angell & Ames on Private Corporations [10th ed.], pp. 439, 450; 3 Fletcher, Cyclopedia of Corporations, § 1816; 2 Thompson on Corporations, § 1186; 2 McQuillan, Municipal Corporations, § 552; Niblack, § 35.)

■ It is the general rule that, before an officer may be amoved, specific charges must be served, adequate notice must be given, and full opportunity of meeting the accusations must be afforded. (Niblack, § 35; *Fisher* v. *Keane*, L. R., 11 Ch. Div. 353.) There is authority for the proposition that these requirements may not be waived. Thus in *Downing* v. *St. Columba's Society* (10 Daly, 262, 264) this was stated to be the law: " It has been decided that though a member attends, and enters upon his defense, he does not waive his right to a notice of the charges. Fair dealing requires that notice shall be given, and that the charges shall be clearly stated (*Marsh* v. *Huron College*, 27 Grant, U. C., Ch. 605, 628; *Labouchere* v. *Wharncliffe*, L. R., 13 Ch. D. 346; *Fisher* v. *Keane*, L. R., 11 Ch. D. 353)." Only the first of the cases thus cited supports the proposition asserted. In *Labouchere* v. *Wharncliffe* the question was whether Mr. H. Labouchere had properly been expelled from the Beefsteak Club of London. It was held that he had not

been, for the reason that the resolution of expulsion had not been carried by a two-thirds majority, as required by the rules. In *Fisher* v. *Keane*, a case also dealing with the expulsion of a club member, it appeared that the member had neither received a notice of meeting for his expulsion or been present thereat. The prevailing opinion seems quite the contrary of that expressed in *Downing* v. *St. Columba's Society* (*supra*). Thus we find that in *Reg.* v. *The Bailiffs* (2 Raym. 1232) the removal of an officer was contested on the ground that the notice served upon him did not specify the time when the charges would be heard or correctly describe the charges for which he would be tried; that " to these objections it was answered, and resolved, that the serjeant appearing, and being charged, and answering, supplied the want of notice, both of the time, and of the offense; " that in *Commonwealth* v. *Pennsylvania Beneficial Institute* (2 Serg. & Rawle [Penn.], 141), while it was held that no man might be expelled from a society " in his absence without notice," nevertheless that " if he is present when the subject is taken up, and willing to enter into the inquiry immediately, there is no occasion for further notice; " that in the case of *Pitcher* v. *Board of Trade* (121 Ill. 412, 421), which dealt with the expulsion of a member from the Chicago Board of Trade, it was held that all irregularities were waived by his appearance before the board of directors and the submission of his case for trial before them " without objection either to the manner in which that body was constituted, or to the mode of its proceeding." Learned text-writers have entertaned the opinion " that a man may waive anything which the law has intended for his benefit, is a general proposition which cannot be denied; and as previous notice of an offense charged against a party, is given him only that he may come prepared to defend himself, he may, no doubt, dispense with it." (Kyd on Corporations, vol. 1, p. 447.) " But if he, without qualification, submits himself to the

jurisdiction of the society, he undoubtedly waives his right to notice." (Niblack, § 68.) In *People ex rel. Brewster* v. *" Old Guard "* (87 App. Div. 478, 485; 178 N. Y. 576) the relator, who had been expelled from membership in a club, complained that the tribunal which expelled him was composed in part of members who were prejudiced against him and had prejudged his case. The court said: " In the case at bar the relator submitted to the jurisdiction, accepted the court as constituted, allowed the investigation to proceed and participated in it to the very end. He could waive his objection to jurisdiction if there were any (*People ex rel. Deverell* v. *Musical Mut. Protec. Union*, 118 N. Y. 107) and he did so."

In our case, the notice of the meeting at which the resolution was subsequently adopted was a call to a regular stated meeting of the corporate body, not to a special meeting, so that the statutory requirement, that for the call of a special meeting there must be a notice " specifying the business to be transacted thereat " (Religious Corporations Law; Cons. Laws, ch. 51, § 188), does not apply. However, the call sent out was accompanied by a paper entitled " Agenda for corporate meeting Oct. 13, 1930," which, among other things, specified, as matters to be taken up, " Reports; Board of Trustees." At a meeting of the board of trustees, held on October 10th, a report had been adopted for presentation to the corporate body " in order that they may take action," detailing the acts of misconduct for which the petitioners were subsequently amoved. The petitioners were present at the board meeting and heard the report read. They must, therefore, have been advised, through the notice and " Agenda " served, that at the meeting called for October 13th their acts of alleged misconduct would be considered, and that action might be taken. However this may be, the fact is that the petitioners attended the meeting and heard the report read. They made no objection that proper notice had not been served; that

written charges had not been filed or served; that opportunity had not been given to prepare a defense; that there was present only a partial membership to try the charges. They did not deny that the facts related in the report or the amoving resolution were true; they did not complain that no witnesses had been called to establish the charges, or demand permission to call witnesses to refute them. On the contrary, without objection to the immediate consideration of the subject of their removal or to the informality of the proceedings, they entered into the debate, and discussed the subject of their removal, entirely upon the merits, at great length. Having so acted, it is our opinion that they could not thereafter, in a court of law, justly be heard to complain that their case was not properly called for trial, or that the corporate body which heard it was without power to render decision.

■ The Religious Corporations Law, section 189, provides that at every corporate meeting " the action of the meeting upon any matter or question shall be decided by a majority of the qualified voters voting thereon * * * except that by-laws can be adopted or amended only by a two-thirds vote, as hereinbefore provided by this chapter." Even if the by-laws of this corporation otherwise provided, a majority vote, under the express terms of the statute, would have been effective to carry a resolution of removal. However, the by-laws did not provide to the contrary. Article XIV, section 10, reads as follows: " Unless otherwise provided in these by-laws, a majority vote of qualified voters present and voting shall be sufficient for an election or to carry a motion." It is true that section 5 of the same article states that Robert's Rules of Order shall govern at all corporate meetings " where they do not conflict with these by-laws." In so far as Robert's Rules do provide that a removal from office must be by a two-thirds vote, they are in conflict with the by-laws as well as the statute. The resolution was carried by a majority vote, and that was sufficient.

There is a great dearth of authority upon the subject of adequate cause for amotion. Text-writers and judges alike have seemed content, in stating the general principle, merely to echo the words of Lord MANSFIELD in *Rex* v. *Richardson* (*supra*). (2 Kent, 298; Kyd on Corporations, vol. 2, p. 62; Niblack, § 35; *Fawcett* v. *Charles, supra; People* v. *Medical Society*, 32 N. Y. 187.) So far as pertinent, Lord MANSFIELD's specification of offenses which are sufficient to justify the amoval of an officer, set forth in *Rex* v. *Richardson*, is as follows: "Such as are only against his oath, and the duty of his office as a corporator; and amount to breaches of the tacit condition annexed to his franchise or office" (p. 538). This was repeated, almost word for word, by NELSON, J., in *Fawcett* v. *Charles* (*supra*), who says one cause may be this: "Where it relates merely to his official or corporate character, and amounts to breaches of the condition, tacitly or expressly annexed to his franchise or office" (p. 476). May we say that the corporators in our case, exercising a latitude of judgment permitted them, were entitled to declare that each of these petitioners had so violated "the duty of his office" and committed such "breaches of the tacit condition annexed to his office," that because of such derelictions his amoval must follow?

The board of trustees of the Fifth Church of Christ, Scientist, consists of nine members. One of the duties enjoined upon them by the by-laws is this: "To take action on applications for membership as submitted according to the provisions of these by-laws at its regular meeting in February, May, August and November." The by-laws likewise provide: "Applications for membership which have been received by the Board of Trustees according to the provisions of these by-laws shall not remain in the hands of the Board for more than two months before consideration thereof." They also provide that the board of trustees shall manage the affairs of the church "subject, however, to the right of the church

membership to give instructions in all matters at any corporate meeting duly called." They provide further that no applicant shall be admitted to membership except with the concurrence of the nine members of the board.

Long prior to the regular May meeting of the board twenty applications for admission to membership, duly drawn and executed, had been filed and submitted to the board. At that meeting these applications were brought to the attention of the board members, including the three petitioners, in order that action might be taken. A vote was taken upon the question of their acceptance. Six trustees voted to grant the applications; the petitioners declined to cast their votes, either for denial or acceptance. At a corporate meeting, later held in the same month, it was voted to be " the sense of the corporate body that these applicants for membership be definitely acted upon in August." Then came the August meeting of the board; again a vote was had upon the applications; again six trustees voted to grant them; once again the three petitioners declined to cast their votes, either against or in favor of the applications. These were the acts of misconduct which were reported by the board of trustees to the corporate members at the regular meeting held on October 13th, in order " that they may take action." These were the acts of the three petitioners which prompted the resolution for their amoval, adopted at that meeting. The resolution in terms demanded that they be removed because they " failed to vote on twenty applications for admission to the church, thus deliberately disobeying the by-laws of Fifth Church and the request of the corporate body expressed in a motion passed without a dissenting vote at the meeting of May 21st, 1930." The petitioners, on the presentation of the resolution, did not deny that they committed the acts charged. Debating the resolution upon the merits, they offered elaborate explanations of their failure to vote upon the applications. Their

328

explanations might have seemed sufficient to the corporate members; having been deemed insufficient by that body, we may not determine that they were sufficient. As the case stands before us, it must be viewed as if the petitioners, without valid excuse, recalcitrantly declined to exercise their trust powers and perform their trust obligations. Inexcusably, contumaciously, they declined " to take action on applications for membership " at the May or August meetings, as prescribed by the by-laws; willfully they ignored the rule that applications for membership " shall not remain in the hands of the Board for more than two months before consideration thereof; " defiantly they refused to follow the instructions of the corporate body to act upon the admissions, although it was their bounden duty to conduct the corporate affairs subject " to the right of the church membership to give instructions in all matters at any corporate meeting duly called." We think that the corporate body was justified in finding that each petitioner violated " the duty of his office " and committed breaches of " the condition tacitly annexed " thereto, and that the power of amotion was open for exercise, and has been properly exercised by the corporate members.

The order of the Appellate Division should be reversed and that of the Special Term affirmed, with costs in this court and in the Appellate Division.

POUND, J. (dissenting). The three trustees could be removed only for cause after notice and a hearing. They were removed summarily after a debate on a resolution which was not a trial on charges after notice. They did not waive their rights by opposing the adoption of the resolution. Such irregularities are subversive of the regular procedure in accordance with which a religious organization should operate and should not be tolerated.

CARDOZO, Ch. J., CRANE, O'BRIEN and HUBBS, JJ., concur with KELLOGG, J.; POUND, J., dissents in memorandum in which LEHMAN, J., concurs.