SAMUEL KAPLAN, Individually and as President of MOVING PICTURE MACHINE OPERATORS UNION OF GREATER NEW YORK, LOCAL No. 306 OF INTERNATIONAL ALLIANCE OF THEATRICAL STAGE EMPLOYEES AND MOVING PICTURE MACHINE OPERATORS OF THE UNITED STATES AND CANADA, a Voluntary Association of More Than Seven Persons, Plaintiff, *v.* WILLIAM C. ELLIOTT, Individually and as President of INTERNATIONAL ALLIANCE OF THEATRICAL STAGE EMPLOYEES AND MOVING PICTURE MACHINE OPERATORS OF THE UNITED STATES AND CANADA, a Voluntary Association of More Than Seven Persons, Defendant, and SAMUEL M. SIMON and Others, Intervenors.*

CHARLES H. BAYER, Plaintiff, *v.* WILLIAM C. ELLIOTT, Individually and as President of INTERNATIONAL ALLIANCE OF THEATRICAL STAGE EMPLOYEES AND MOVING PICTURE MACHINE OPERATORS OF THE UNITED STATES AND CANADA, a Voluntary Association of More Than Seven Persons, Defendant.

Supreme Court, New York County, January 30, 1933.

*Ornstein & Silverman* [*C. H. Kelby* of counsel], for the plaintiff.

*Rubien & Bregoff* [*S. M. Birnbaum* and *C. Mintz* of counsel], for the defendant.

*M. O. Bennett,* for the intervenors.

MILLER, J.  The plaintiffs, who were formerly the president and a member of the executive board of Local No. 306 of International Alliance of Theatrical Stage Employees, bring these actions

* See, also, 145 Misc. 863.

to have their removal from their respective offices set aside, and to have annulled a determination, barring these plaintiffs and their co-officials from holding office for a period of five years, made by the general executive board of the International Alliance.

Local No. 306 is a voluntary association. It is a branch or local of the International Alliance of Theatrical Stage Employees and Moving Picture Machine Operators of the United States and Canada, which is also a voluntary association. The International Alliance has 699 locals, each operating under a charter from it. Local 306 functions under one of these charters. The removal from office and the bar against re-election were effected by resolution of the general executive board of the International Alliance, adopted after a number of hearings held by the board. The hearings were begun on September 6, 1932, and continued from time to time until November 26, 1932. The plaintiff Kaplan and the other officers of Local 306 were summoned to appear, and some of them, including Kaplan, did so. At these hearings many of the officers of Local 306 were examined.

The record of these proceedings proves clearly that the plaintiffs and all of their co-officers were informed from the outset that their acts as officials of the local union would be investigated. The record also establishes that they were fully aware during the pendency of the proceedings that their official conduct was the subject of the investigation and that, if they were found guilty of improper conduct or neglect of duty, disciplinary action, drastic in character, would be taken. At the close of the hearings, the general executive board found the officers of the local union guilty, and thereupon directed the removal of the plaintiff Kaplan and the other officers, and determined that they should be barred from holding office for the period of five years.

The plaintiffs seek to set aside this determination of the executive board upon the following grounds:

1. That the board had no authority to remove officials of an affiliated local or to impose a sentence debarring them from office for five years.

2. That the action of the board was taken without affording the officers a fair trial upon specific charges.

The constitution and by-laws of the International Alliance, the parent body, provide in part as follows: That the international president or his appointee shall have power " to examine all books, papers, etc., of any affiliated local whenever he may deem it necessary " (Const. art. 7, § 10); no constitution or by-law or an amendment thereto may be adopted by a local except with the prior

approval of the International Alliance (By-laws, art. 2, § 43); no local " shall be permitted to accept into membership any applicant whose application has not first been approved by the general secretary-treasurer " (By-laws, art. 2, § 23); no local may, " except by consent of the General Executive Board * * * make radical demands which might result in strike or lock-out " (By-laws, art. 4, § 1); " in the event of serious disagreement between a local and employer, the local union *shall promptly* advise the President of this Alliance of the circumstances, which he shall cause to be thoroughly investigated in an endeavor to consummate amicable adjustment " (By-laws, art. 4, § 2); no strike may be called by the local except with the authorization of the international president (By-laws, art. 4, §§ 2 and 3); any. member who misappropriates the funds or property of the International Alliance or of any local may be expelled by the parent body (Const. art. 20); appellate jurisdiction over the acts of the locals is given to the parent body (By-laws, art. 10, § 5; see, also, article 10 of the constitution of Local 306).

Article 14, section 2, of the constitution of the International Alliance vests in its general executive board " entire supervision and authority over the Alliance except during such time as the Alliance is assembled in convention," and sections 7 and 11 of article 14 provide as follows:

" Sec. 7. Emergency Powers. Should any organization in the theatrical field become engaged in a dispute tending to involve this Alliance or be productive of request for the support of our organization, *decision in the premises shall be left to the General Executive Board with full power to act.*"

" Sec. 11. Emergency Cases. *In case of any emergency the International President shall have the power to suspend any law or laws of the Alliance or of any local union, provided he obtains the unanimous consent of the members of the General Executive Board.*"

Section 12 of article 2 of the by-laws contains the following provision: In the event of a suspension of a local, " all moneys, books, seal and other property must be forwarded to the General Secretary-Treasurer of the International Alliance." It is manifest from the provisions above quoted, and it is reasonable to imply from the general nature of its constitution and by-laws, that the International Alliance in case of an emergency has control and supervision over this local union, with authority to institute an investigation, to conduct the necessary hearings and to arrive at a determination such as was made here.

" A corporation aggregate has the power, as incidental to its constitution, of removing an officer for reasonable cause." (*Matter of Koch,* 257 N. Y. 318, 322.)

The hearing given to the officers was sufficient in all respects. As the general executive board did not constitute a court, its proceedings are not to be controlled or decided by the same degree of formality that would be required upon a charge before an ordinary tribunal of justice. I find that the action of the executive board was not capricious or corrupt but was *bona fide* and that in arriving at its determination the board administered its own rules fairly and honestly. It announced at the inception of the investigation that its object was to pursue a sweeping inquiry into the actions of the officials of Local 306, and long before the investigation was concluded every officer thereof was reasonably apprised that his tenure might be ended at its close.

The plaintiffs acquiesced throughout the investigation in the method of procedure followed by the board. Permission to cross-examine hostile witnesses was not demanded, nor were there any requests for copies of the minutes of the sessions.

As none of the objections urged upon this trial were raised at any time prior to the conclusion of the proceedings, they are not now available to the plaintiffs. (*Matter of Koch, supra.*)

The plaintiff Bayer had knowledge that his conduct as an officer was under investigation, and though invited and requested to participate in the proceedings he failed to defend himself. Upon this trial he offered no proof of lack of notice or that he was without knowledge of the proceedings. Having had notice of the proceedings neither he nor the other officials of the local who failed to appear can now " justly be heard to complain that their case was not properly called for trial, or that the corporate body which heard it was without power to render decision." (*Matter of Koch, supra,* 325.)

The issue remains whether there was sufficient proof to sustain the determination of the general executive board. The plaintiffs claim that the executive committee did not make known to them the complaints and accusations made against them at the various hearings and, for that reason, they were not given an opportunity to properly defend themselves. Assuming that the information given to the committee by persons who were not officials of the local union was not binding upon the plaintiffs, the statements of the officers themselves before the executive board and the admissions drawn from them disclosed that they had violated the duties of their office and were sufficient to justify the action of the board.

Briefly summarized, these statements and admissions referred to the methods of the officials of the local union in accepting new members; failure to report on some of their financial transactions; discrimination against out-of-town members; inability to account

for funds which had come into their possession; the receipt by the president of many thousands of dollars without proper accounting; the interest of the plaintiff Kaplan in a supply corporation; other irregularities which caused litigation; and the neglect of all the officials to attempt to remedy these and other conditions after they had aroused public criticism. The explanations offered by the officials were deemed insufficient. Under the circumstances, the executive board was justified in finding that the officials of the local union had violated the duties of their office.

While the determination that the officers removed shall be ineligible for five years for re-election may have been severe in many instances, still it was reasonable to impose some restriction for a definite period. Without such restriction the removals might have proved ineffective. Under the constitution and by-laws of the International Alliance there is a right to appeal to the next international convention in 1934. This part of the determination may then be reviewed.

Upon the trial the defendant agreed, except as to the plaintiff Kaplan, to relieve all the removed officials after the next election from the restriction against holding office for five years, and the defendant further agreed that an election of the new officers of the local union would be held within forty-five days.

The restriction against holding office will, therefore, be modified in the judgment to be entered herein as to all the removed officials with the exception of the plaintiff Kaplan.

The complaints are dismissed upon the merits.

Submit findings of fact and conclusions of law in accordance with this opinion within five days from the publication hereof.