WALKER MEMORIAL BAPTIST CHURCH, INC., Plaintiff, *v.* JOHN
W. SAUNDERS and Others, Defendants.*

Supreme Court, Special Term, New York County, January 23, 1940.

*See, also, *Saunders* v. *Armstead* (259 App. Div. 119).

*Snitow & Snitow,* for the plaintiff.

*Henry P. Lipscomb* [*Alan L. Dingle* of counsel], for the defendants.

ROSENMAN, J.   This action was brought to enjoin the defendant Saunders from preaching in the plaintiff's church, and to restrain him from exercising any other functions as minister thereof and to prevent the other named defendants from performing any corporate or official act in connection with the administration of plaintiff as a corporate body.

The plaintiff was incorporated under the Religious Corporations Law in 1916.   The defendant Saunders has been its pastor since 1928.   In the early part of 1939 said defendant, without authorization from the board of trustees of the plaintiff, began negotiations for the sale of the plaintiff church and for the purchase of another church building.   The other defendants, it is charged, co-operated with the minister, and together they collected approximately $1,300 from the members of the church through the various auxiliary church organizations for the purpose of buying said church building. The sums so received by the defendants were not turned over to the trustees, according to the plaintiff's contention, and the defendants did not account for the same.   Information of such action

coming to the attention of the board of trustees, it decided to take action against said defendants. The trustees met on March 6, 1939, and passed a resolution opposing the sale of the church. On May 16, 1939, the board of deacons met to investigate the rumors that the defendants were engaged in this fund-raising activity. Defendant Saunders refused to answer any of the charges made against him at that meeting. Thereafter the trustees met on May 24, 1939, to continue the investigation. At that meeting a resolution was unanimously passed to have charges against the defendants heard at a special corporate meeting to be called for June 5, 1939. Although there is dispute about it, I find that the meeting was called on proper notice and in accordance with the provisions of section 133 of the Religious Corporations Law which governs the procedure.

On the evening of June fifth the meeting was held in the lecture room of the church, but the defendants did not attend. Instead, defendant Saunders and the others attempted to hold a meeting of their own in the main auditorium thereof, although they were duly informed of the corporate meeting then being held elsewhere in the church and were invited to attend. The charges were presented to the assembled corporate members and a full and complete trial had. A vote of the entire membership present was taken, and eighty-two voted in favor of and three voted against the dismissal of defendant Saunders as pastor, and the remaining defendants as corporate members of the church. The meeting was conducted in accordance with section 134 of the Religious Corporations Law. The defendants were thereafter regularly notified of the action taken at said meeting. But the defendants refused to obey the direction to refrain from preaching and from taking part in the corporate functions, contending that the corporate body had no jurisdiction to dismiss Saunders as pastor or to remove the other defendants as members of the corporation.

The plaintiff concedes that, as a corporation, it has no power to remove any of the defendants from membership in the church itself as distinguished from the corporation.

In dealing with religious corporations it is necessary to bear in mind that two separate entities are involved. One is the legal corporation; the other is the spiritual association of religious congregants which constitutes the church itself. (*Petty* v. *Tooker*, 21 N. Y. 267; *The Elder, etc., of First Baptist Church* v. *Witherell*, 3 Paige Ch. 296; Niblack, Law of Voluntary Societies [2d ed.], § 33.)

The principal question here presented is the proper legal method for removing a pastor of a Baptist church. The plaintiff contends that he is removable by a corporate meeting. The defendants

contend that he cannot be removed by a corporate meeting, and that he can be removed only in accordance with certain customs and usages of the church itself as distinguished from the corporation. These customs and usages were the subject of testimony, and it is clear that no attempt was made to comply with them in removing defendant Saunders as pastor.

The statutes on the subject are not clear, but my conclusion is that, even apart from common-law doctrine hereinafter discussed, they provide that removal by the church corporation is a legal method in the case of a Baptist church like this plaintiff.

Section 25 of the Religious Corporations Law, one of the general provisions of that statute, reads as follows:

" § 25. Pastoral relation. No provision of this chapter authorizes the calling, settlement, dismissal or removal of a minister, or the fixing or changing of his salary, and a meeting of a church corporation for any such purpose shall be called, held, moderated, conducted, governed and notice of such meeting given and person to preside thereat ascertained and the qualification of voters thereat determined, not as required by any provision of this chapter but only according to the aforesaid laws and regulations, practice, discipline, rules and usages of the religious denomination or ecclesiastical governing body, if any, with which the church corporation is connected."

Ordinarily, therefore, the procedure to be followed in the removal of a minister would be that outlined therein, viz., that prescribed by the rules and usages of the denomination.

The following section, 26, deals in similar fashion with certain other functions of the church.

But section 27, reading as follows: " § 27. Reservation as to Baptist and Congregational churches. Sections twenty-five and twenty-six are not applicable to a Baptist church, a Congregational church or to any other religious corporation having a congregational form of government," specifically removes section 25 from consideration in passing upon the legal validity of the action taken by this Baptist church.

The plaintiff relies on section 170 of the statute as authority for its action. But section 170 is a part of article 8, which is limited to Congregational and Independent churches. Although the plaintiff church is congregational in character (because it is Baptist and has no hierarchy) and is independent (because if has no subsidiary relationship to any other church or governing body), it is neither a Congregational nor an Independent church (spelled with initial capital letters), as included in article 8. It is apparent, therefore, that article 7, which specifically deals with Baptist churches, is the

only specific article of the statute which can apply, since no other general provision in the chapter is relevant. Nowhere in that article, however, can be found a single provision relating to the machinery to be used in removing a minister. The only thing that can there be found is a provision (§ 139) which prohibits the trustees of the church from doing so. But the plaintiff concedes that the trustees cannot remove the pastor. An examination of the entire chapter, therefore, discloses no provision to guide the plaintiff church in removing its spiritual leader.

The only other relevant statute is the General Corporation Law. That statute pertains to all corporations, both stock and non-stock. Religious corporations are of the latter class. (Gen. Corp. Law, § 2; § 3, subd. 4.) Section 6 of the General Corporation Law provides:

" § 6. Conflicting corporate laws. If there be in any other corporate law a provision which conflicts with any provision of this chapter or of the Stock Corporation Law, the provision of such other corporate law shall prevail, and the conflicting provision of this chapter or of the Stock Corporation Law shall not apply in such case. If there be in any other corporate law a provision relating to a matter embraced in this chapter or in the Stock Corporation Law, but not in conflict therewith, both provisions shall apply."

Subdivision 4 of section 60 of the General Corporation Law deals with the removal by the corporation of its officers. But by the precise words of section 130 thereof, section 60 does not apply to religious corporations. There is no such prohibition, however, with respect to section 14 of the General Corporation Law. The pertinent portion of that section reads as follows:

" § 14. Grant of general powers. Every corporation as such has power, though not specified in the law under which it is incorporated: * * *

"4. To appoint such officers and agents as its business shall require."

While the exact status of a minister as an officer or employee of the church is still unsettled, the ordinary rules of law relating to employment apply. (Zollman, American Civil Church Law, pp. 340, 341.)

Certainly the minister must be included in the term " officer or agent," even if he is not merely an employee. Of course if he were merely an employee, such as a caretaker, there would be no doubt of the right of the corporation to hire and discharge him. But even as an officer or agent, the plaintiff religious corporation as a corporate body would have the power to appoint a minister under that provision, since there is no applicable provision in the Religious Corporations Law.

The power to appoint, in a case where the term or tenure is not defined by statute or otherwise, carries with it the correlative power to remove. (3 Thompson on Corporations, [3d ed.] § 1926; *Stott* v. *Stott Realty Co.*, 246 Mich. 267, 270; 224 N. W. 623; *People ex rel. Sims* v. *Bd. of Fire Commissioners*, 73 N. Y. 437, 441; *People ex rel. Corrigan* v. *Mayor*, 149 id. 215, 223, 224; *Bechtold* v. *Stillwagon*, 119 Misc. 177, 178.)

Even apart from statutory authority, it is also a settled rule of the common law that " amotion, the power to remove a corporate officer, * * * is a power necessarily incident to every corporation." (*Matter of Koch*, 257 N. Y. 318, 321. See, to the same effect and holding, *People ex rel. Stevenson* v. *Higgins*, 15 Ill. 110, 113; 2 Fletcher Cyc. Corporations, [1931] § 351.) The rule has been stated succinctly in 7 Ruling Case Law (Corporations, § 417): " Still the right to remove such officers is inherent in the corporation and exists in the absence of statutory authorization. And where the law governing a corporation is silent as to the tenure of the officers thereof, and also as to their removal, the power of amotion is incidental to that of appointment, and the appointing power may remove an officer appointed by them whenever, in their judgment, the best interests of the institution require it."

The corporation, therefore, at a corporate meeting duly called for that purpose, had the legal power to sever the pastoral relation.

The second question arises with respect to the legality of the action taken by the members at the corporate meeting of June 5, 1939, ousting from corporate membership the other defendants named in the action. It should be borne in mind that no attempt was made to disfranchise those defendants as members of the church itself; the corporate members present at that meeting merely severed the defendants' connections with the corporate body as such.

The two bodies are separate and distinct from each other, as hereinbefore noted, and the action of one of those bodies, ordinarily, could have no effect upon the members of the other. (Niblack, *supra*, §§ 33, 34, 35, 36, 40; *People ex rel. Dilcher* v. *German United Ev. Ch.*, 53 N. Y. 103.)

But within these two separate bodies, the power of disfranchisement, *i. e.*, the removal of a member, is a power as necessarily incident to the corporation by virtue of the common law, as the power of amotion. (2 Kent's Comm. [14th ed.] 297; *Matter of Koch*, *supra*.) However, the right of disfranchisement has been limited, in that it must be exercised only: (a) where a member commits a crime (not necessarily in relation to the corporation) which is so infamous that it renders the offender unfit for any

public franchise; (b) where the offense is committed by a member in relation to his work in the corporation and is in derogation of the conditions annexed to that relation; (c) where the offense combines his dereliction to the corporation and a public crime. (*Fawcett v. Charles*, 13 Wend. \*473, \*476; Niblack, *supra*, § 36.) Here the defendant members were tried and found guilty of a violation of their duty to the corporate body, as members and corporators thereof, viz., the collection and retention of funds which should have been turned over to the corporation in charge of the church. The acts, therefore, come within subdivision (b) above. Having been fairly tried in accordance with law, their removal was proper and not subject to complaint in this court.

Besides it is the law of this case that the complaint states a cause of action as against all the defendants. The granting of the temporary injunctions at Special Term and the continuance of the action by the Appellate Division necessarily decide that the complaint is sufficient. The evidence on behalf of the plaintiff sustains the allegations of the complaint as against all the defendants.

Findings and conclusions passed upon. Settle decision and judgment.